284 So.2d 485 (1973)
James William PHILLIPS Jr., Appellant,
v.
The STATE of Florida, Appellee.
No. 73-147.
District Court of Appeal of Florida, Third District.
August 28, 1973.
Rehearing Denied November 20, 1973.
Phillip A. Hubbart, Public Defender, and John Lipinski, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Peter La Porte, Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
Defendant-appellant was charged by information with carrying a concealed firearm, to wit: a pistol. He entered a plea of not guilty and was tried and found guilty by a jury. He was sentenced to a term of five (5) years in the state penitentiary.
For his first point on appeal, appellant contends that the trial court erred in denying his motion to suppress the evidence (i.e. the pistol) as being the product of an illegal search and seizure. We cannot agree.
After a careful examination of the record, we conclude that the police officers had sufficient cause to believe that criminal activity was afoot and, therefore, stop the defendant and request to see his driver's license, thereupon noticing in the defendant's trousers a bulge which turned out to be the pistol in question. See F.S. § 901.151 F.S.A. and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Appellant secondly argues that the trial court erred in failing to suppress appellant's statements which had been obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
With reference to the above, Officer Martinez testified at the trial as follows:
"Q (By Mr. Kaye) Do you recall what Officer Brockmeier said to the Defendant relative to his Rights?
"A Yes, sir.
"Q What did he say?

*486 "A He said he carried the gun because 
"Q I am saying, what did the officer say to the Defendant?
"A He said he had the right  I don't have the card with me  he said he had the right to remain silent and that anything he said could be used against him. If he didn't have enough money the State would provide him with an attorney and so on.
"Q What were the answers the Defendant gave?
"A That he understood and he said yes after every question. [Emphasis Supplied]
"Q Did there come a time that the Defendant made a statement after being advised?
"A Yes.
"Q What was the statement?
"A He carried a gun because it was a black area and he was there because of narcotics."
Next, Officer Brockmeier proffered the following testimony:
"A I asked him the first questions on the scene after I read him the Rights. Then, I read him the Rights again at the station during the preliminary screening, and I asked him questions then, too.
"Q After you read him his Rights at the station, and you asked him the question, `Why were you carrying the gun?'; what was his answer?
* * * * * *
"Q So, after you read him the Rights, you asked him why he carried the gun?
"A He said because it was a predominantly black area.
"Q What specifically did he say with reference to the gun?
"A He said he was carrying it because he was in the black area."
Officer Brockmeier also testified to the effect that the defendant responded in the affirmative when asked if he understood his rights and further when questioned if he would like to make a statement, the defendant gave no answer.
In light of the above, we find that appellant was informed adequately and fully of his Miranda rights prior to interrogation and made a knowing and intelligent waiver of his right to counsel. For as the Florida Supreme Court held in State v. Craig, Fla. 1970, 237 So.2d 737: "The Miranda decision never contemplated that waiver of counsel could be accomplished only by the use of the words, `I am willing to answer questions without the services of a lawyer.' There is no magic in these words. Any clear and unambiguous conduct by a person who has been advised of his rights which indicates his willingness to answer questions without a lawyer is surely sufficient. A verbal acknowledgment of understanding and willingness to talk, followed by conduct which is consistent only with a waiver of his right to have a lawyer present, by one who has been advised of his rights, constitutes an effective waiver of his right to counsel at that stage of the proceeding." See also Fowler v. State, Fla. 1972, 263 So.2d 202 and Thompson v. State, Fla.App. 1970, 235 So.2d 354.
Further, this court has held recently that the appellate court will not substitute its judgment for that of the trial court as to the voluntariness of confessions or admissions after the defendant has been advised of his rights. Barker v. State, Fla. App. 1973, 271 So.2d 790. Thus, this second argument of appellant must fail.
Accordingly, the judgment is affirmed.
Affirmed.