STONE, Judge.
The defendant, Amos Weaver, appealed from a conviction for possession of cocaine. He asserted that the trial court erred in denying a motion to suppress evidence found in his sock during a warrantless search of his person. We reverse.
On two occasions on the morning in question, Weaver was observed by a passing deputy, along with a codefendant, loitering beside a railroad track, near an intersection, in a known “drug area.” One of them waved at the deputy, who acknowledged that his vehicle was well known in the area. He considered the circumstances to be suspicious and requested that Deputy Peskoe check them out.
Deputy Peskoe testified that as he approached the two men they walked away. At that point, and without further grounds, Deputy Peskoe acknowledged that he “detained” them. The deputy testified that he instructed the men to “remain where they were,” and that the appellant was very “vociferous” in trying to dissuade him from proceeding with the investigation. The deputy accused the defendant of selling drugs and asked him if he had anything in his pockets. At that time the defendant, “mouthing off” about being harassed, removed items from his pockets and threw them on the car. The defendant stated that he “knew the routine” and “assumed the position.” The defendant did not specifically consent to a search, but did say “I know how to play the game.”
The deputy further testified that he advised the defendant that he could be charged with obstruction of justice for not allowing the deputy to continue his investigation and then started to pat him down. The deputy did not recall whether he threatened the defendant with the obstruction charge before or after he started to pat him down, but did recall that he advised him two or three times about obstruction of justice during the pat down. The defendant was not known to the deputies. Deputy Peskoe testified that the sole reason for conducting the pat down was because razor blades and knives were commonly carried by persons in that area. The deputy stated that Weaver did not verbally request that he stop the “pat down,” but the deputy acknowledged that the defendant had “tried to come off the car several times” as the search “got down toward his sock.”
The sole argument of the state on appeal was that this was a “mere encounter” and that the defendant, without being asked, consented to the search. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); State v. Grant, 392 So.2d 1362 (Fla. 4th DCA), rev. denied, 402 So.2d 610 (Fla.1981). The trial court, in the order, found that the stop and detention was “non-consensual,” but held that the deputy was acting on a founded suspicion and that there was uncoerced consent to the search. However, on this appeal the state concedes that the facts known to the deputy did not support a stop and detention based on a founded suspicion of criminal *1200 activity. The state also does not contend that the search was authorized under the “Florida Stop and Frisk Law,” section 901.-151, Florida Statutes (1987). See also, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The state also asserts that, if consent was given during a mere “encounter,” the trial court properly applied the preponderance of the evidence standard of proof to the issue of consent. See Denehy v. State, 400 So.2d 1216 (Fla.1980); Elsleger v. State, 503 So.2d 1367 (Fla. 4th DCA 1987). The state does not argue that the proof rises to a “clear and convincing” level. There is no bright line test to use in establishing whether conduct, communications, and appearance of the officers amount to a stop and detention rather than a police-citizen “encounter.” The test is whether a reasonable person would feel free to terminate the contact given the totality of the circumstances. Florida v. Royer; Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
We are satisfied, after a review of the record, that these circumstances did not constitute a mere encounter, but that the defendant was in fact stopped and detained without the required founded suspicion., McCarthy v. State, 536 So.2d 1196 (Fla. 4th DCA 1989). Nor did the trial court consider this to be a simple encounter, rather it recognized that the initial stop was non-consensual. It is' clear from the deputy’s own testimony that the defendant was not, and did not feel free to leave. Weaver clearly was responding to the deputy’s exercise of authority. Although the deputy acted lawfully in approaching the two men, and was entitled to make reasonable inquiry, he had no lawful grounds for their continuing and coercive detention. Cf. I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). See also Major v. State, 389 So.2d 1203 (Fla. 3d DCA 1980), rev. denied, 408 So.2d 1095 (Fla.1981); Correa v. State, 389 So.2d 1204 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1146 (Fla.1981). Additionally, even if the conduct of the defendant constituted consent to a search, such “consent” is presumptively tainted by the unlawful police conduct. Florida v. Royer; Norman v. State, 379 So.2d 643 (Fla.1980); Jordan v. State, 544 So.2d 1073 (Fla. 2d DCA 1989). It cannot be said here that there was clear and convincing proof of a break in the chain of unlawful detention, to dissipate the taint of the improper stop and seizure. Norman v. State.
There is no need for us to address the additional issue of whether consent, if lawfully given, was withdrawn by the defendant’s subsequent acts.
Therefore, the appellant’s conviction and sentence for possession of cocaine are reversed.
DELL, J., and FRANK, RICHARD H., Associate Judge, concur.