615 So.2d 871 (1993)
STATE of Florida, Appellant,
v.
James DOYLE, Appellee.
No. 92-2411.
District Court of Appeal of Florida, Fourth District.
March 24, 1993.
*872 Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellant.
No appearance for appellee.
HERSEY, Judge.
The state appeals from an order granting a motion to suppress physical evidence. We reverse.
Appellee Doyle was a passenger in an automobile which had been stopped for having a broken headlight. Deputy Neil Glassman testified that he was acting as backup for the officer who made the stop. He further testified:
I approached on the passenger's side where the defendant was seated in the front passenger's seat. When I approached, I notice [sic] that the defendant was acting very nervous. He was looking around constantly.
I had approached the vehicle to ascertain the correct identity of the driver the deputy I had backed up was talking to at the time. The defendant was looking around. When I asked him as far as the driver's name, he became very defensive. He asked me why. Like I said, he was constantly looking around. He was starting to put his hands inside his pockets.
It was at this time that I noticed a bulge in his left front pants pocket. I ordered the defendant out of the car, I patted down the bulge. It felt to me like a weapon. I pulled it out of his pocket. It turned out to be a long metal crack pipe with a Chinese throwing star... .
... .
And this was attached to the base of the pipe.
Deputy Glassman also testified that the pipe contained what appeared to him to be, based on his experience, cocaine residue. The substance was later field-tested and came up positive for cocaine. He conducted the patdown search for weapons for his own safety, after seeing the bulge in the defendant's pocket. He admitted that when he first approached the car to speak to appellee, he did not suspect him of committing any illegal activities.
Considering the inherent danger to officers who make traffic stops, it is not unreasonable for a backup officer to engage a passenger in conversation while another officer speaks with the driver. See State v. Mahoy, 575 So.2d 779, 780 (Fla. 5th DCA 1991) (court noting that a significant percentage of murders of police officers arise out of traffic stops).
In State v. Louis, 571 So.2d 1358 (Fla. 4th DCA 1990), an officer stopped a car in which the defendant was riding as a passenger, for the lack of a tag light. When the officer approached the driver, the defendant exited the car and started walking around. The officer, fearing for his safety, asked the defendant to stop, whereupon the defendant put his hands inside his bulky jacket. The officer then drew his weapon and told the defendant to remove his hands from the jacket. The defendant complied but threw down an envelope containing cocaine. This court found no unlawful conduct by the officer, stating:
During a temporary encounter with a citizen, an officer, while engaged in a traffic investigation, may conduct a limited protective search of that citizen for weapons, even without probable cause to believe that a crime has been committed... . Tragically, roadside shootings *873 of police officers in this state and country are frequent enough to be on the mind of every officer who makes a traffic stop.
... .
"What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."
Id. at 1359 (citations omitted) (quote from Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 337 (1977)). Thus, the officer's action in engaging appellee in conversation was not illegal, nor unreasonable.
The remaining issue is whether the officer's subsequent conduct was legally permissible under the circumstances of this case.
The court in Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982), rev. denied, 426 So.2d 29 (Fla. 1983), explained that there are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. Also, in Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984), the Florida Supreme Court noted that there is nothing in the constitution which prevents officers from addressing questions to anyone on the street. The court stated that police officers can indeed initiate contact with citizens without creating a stop and seizure situation, holding that there was no unlawful police intrusion when an officer, investigating a suspicious parked car called to his attention by a concerned citizen, merely approached the car and asked the defendant a few simple questions as to the reason for his presence and his current address, then ran a routine check on the car and the defendant's identity. Id. at 387. The supreme court suggested that surely the average, reasonable person under similar circumstances would not find the officer's actions unduly harsh. Id. at 388.
The Lightbourne court relied, inter alia, on State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA 1980), rev. denied, 399 So.2d 1145 (Fla. 1981). In Rawlings, a citizen heard shots outside his home and reported it. Officers responded to the call and found the defendant and a woman on the street in the vicinity of the citizen's house. While one officer started talking to the defendant, the other officer saw the outline of a gun in the back pocket of the defendant's pants. Consequently, the defendant was patted down, whereupon a pistol was found. This court held that the initial contact between the officers and the defendant was merely a temporary encounter rather than a detention or seizure. This court also stated that "[i]f, during a lawful and extremely temporary encounter between a police officer and a citizen, probable cause is formulated to believe that the citizen is carrying a dangerous weapon, a frisk of that citizen's person is entirely justified to insure the safety of the police officer." Id. at 270. See also State v. Francois, 355 So.2d 127 (Fla. 3d DCA) (having observed bulge on defendant's leg, officer was justified in protecting himself by conducting patdown search), cert. denied, 361 So.2d 832 (Fla. 1978); Phillips v. State, 284 So.2d 485 (Fla. 3d DCA 1973) (officers who noticed bulge in defendant's trousers were justified in conducting search), cert. denied, 291 So.2d 205 (Fla. 1974).
These cases support the action of Deputy Glassman in frisking appellee for a weapon and refute appellee's position that an unlawful search and seizure took place. While the trial court arrived at a different conclusion, we find the cases relied upon by the trial court in granting the motion to suppress physical evidence to be either distinguishable or inapposite: In The Interest of T.M.M., 560 So.2d 805 (Fla. 4th DCA 1990) (flight or quick movement not sufficient to create founded suspicion under circumstances of that case); G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985) (detention based on bare suspicion of criminal activity); Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984) (an investigatory detention without founded or reasonable suspicion); *874 Romanello v. State, 365 So.2d 220 (Fla. 4th DCA 1978) (detention based on mere curiosity of officers); Currens v. State, 363 So.2d 1116 (Fla. 4th DCA 1978) (approaching vehicle and ordering an occupant out without founded or reasonable suspicion); Harris v. State, 352 So.2d 1269 (Fla. 2d DCA 1977) (removal of plastic bag from suspect's clothing without suspicion of concealed weapon).
We therefore reverse the order suppressing physical evidence and remand for further appropriate proceedings.
REVERSED AND REMANDED.
STONE, J., concurs.
FARMER, J., dissents without opinion.