785 So.2d 1224 (2001)
Claude JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3296.
District Court of Appeal of Florida, Fourth District.
May 23, 2001.
*1225 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Georgina Jimenez Orosa, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
The issue in this case is whether a police officer may conduct a pat down for weapons during what began as a consensual encounter with a citizen.[1] We hold that during the encounter in this case, the officer made observations which supported his reasonable belief that the appellant was armed and potentially dangerous. He was, therefore, entitled to conduct a pat down under the Fourth Amendment.
Deputy Alex McDonald, an eighteen year veteran of the Broward County Sheriffs Office, was on routine patrol at about 3:51 a.m. on October 5, 1999. He saw appellant Claude Johnson standing by a pay phone at a twenty-four hour gas station. Johnson was staring off into space. McDonald thought that Johnson looked lost, as if he had wandered off from the nearby hospital or nursing home. McDonald, during his seven years of patrolling that area, had encountered similar incidents with patients wandering the area.
After watching Johnson for a few minutes from the other side of the parking lot, the deputy drove his patrol car over to Johnson. At this point, he did not suspect Johnson of any criminal activity.
Johnson began to walk away from the cruiser. The deputy got out of the car. He called over, "Excuse me, sir. Can I speak to you a minute?" He did not order Johnson to stop. Johnson walked over and spoke to Deputy McDonald as they stood next to the pay phone.
The deputy asked Johnson his name and where he lived and began to fill out a field interview card. During this brief conversation, Johnson shook violently, which Deputy McDonald found to be unusual. Johnson appeared to be nervous. He had a bulge in his front left pocket, that "seemed to fill most of his pocket." He kept reaching toward the bulge. Concerned that Johnson might have a weapon in his pocket, Deputy McDonald terminated the conversation and directed him to assume the pat down position.
Johnson complied. As soon as the deputy reached toward the front left pocket of his jeans, Johnson tried to break away and run. During the ensuing struggle, Johnson continued to reach for his pocket, amplifying the deputy's concern that he had a weapon. Unable to control Johnson's hands, the deputy took him to the ground and handcuffed him.
Deputy McDonald found two cigarette packs in Johnson's front left pocket. One pack was full of cigarettes. The other contained a glass tube with Brillo-like *1226 shavings and a white residue. The residue was later determined to be cocaine.
The trial judge found that the initial contact between the deputy and Johnson was a citizen encounter. She ruled that Johnson's actionshis violent physical shaking, his demeanor, and repeated reaching for his bulge-laden left pocket gave rise to the deputy's reasonable belief that he carried a weapon, a finding that gave constitutional support for the pat down. The court, therefore, denied the motion to suppress.
This case tiptoes at the outer limits of Fourth Amendment jurisprudence, where the right of personal privacy runs up against concerns for the safety of law enforcement officers on the street. There is no clear, bright dividing line between a permissible pat down and one that is constitutionally infirm. The Florida cases are fact sensitive; if mapped out, they would look like the west coast of Norway.
The Florida Supreme Court has observed that there are "essentially three levels of police-citizen encounters" for the purpose of Fourth Amendment analysis. Popple v. State, 626 So.2d 185, 186 (Fla. 1993). This case began as a first level "consensual encounter" which "involves only minimal police contact." Id. As the supreme court has written
[d]uring a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
Id. (citation omitted).
The second level of police-citizen encounters is an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Popple, 626 So.2d at 186.
At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. Sec. 901.151 Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
Popple, 626 So.2d at 186 (citation omitted).[2]
It is clear that a pat down is authorized when an officer has made an investigatory stop and the officer has probable cause to believe that the person stopped is armed with a dangerous weapon. See Terry, 392 U.S. at 30-31, 88 S.Ct. 1868; § 901.151, Fla. Stat. (2000). Both Terry and section 901.151(5) authorize a pat down during such a temporary detention. At first, this case did not involve an investigatory stop. Deputy McDonald did not believe that any criminal activity was afoot when he initiated the consensual encounter with Johnson.
The legal issue presented here is whether it is constitutionally permissible to conduct a pat down during a consensual encounter, based on the officer's reasonable belief that the citizen may be armed and presently dangerous, without any indication at the inception of the encounter that the citizen "has committed, [was] committing, or [was] about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county." § 901.151(2), Fla. Stat. (2000).
*1227 This case is controlled by Lightbourne v. State, 438 So.2d 380 (Fla.1983). There, a police officer received a report of a "suspicious car" from a "concerned citizen of the community." Id. at 387. The officer approached the defendant, who was sitting in a parked car, and asked him "a few simple questions" about his identity and the reasons for his presence. Id. The officer "ran a routine check" on the defendant's car and identification. Id. At this point, the officer had "no probable cause or well-founded suspicion that the defendant was about to commit or had committed any crime." Id. The supreme court concluded that the officer had not stopped or seized the defendant under Terry, but had merely initiated a citizen contact. Id. at 388.
Having concluded that the initial contact in Lightbourne was "justified," the supreme court further held that
the ultimate pat-down was also justified in that defendant's furtive movements and nervous appearance when observed by Officer McGowan formulated a reasonable ground to believe that the defendant was armed and potentially dangerous.
Lightbourne, 438 So.2d at 388. Lightbourne relied on this court's decision in State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA 1980). There, we upheld a frisk "during a lawful and extremely temporary" police-citizen encounter as justified, where "probable cause" developed to believe that the citizen was carrying a dangerous weapon. Rawlings, 391 So.2d at 270.
The supreme court followed Lightbourne in Williams v. State, 492 So.2d 1051, 1054 (Fla.1986), receded from on other grounds in Brown v. State, 719 So.2d 882, 886 (Fla.1998), a case in which the police initiated a consensual encounter without any reasonable suspicion that the defendant was involved in criminal activity. During the encounter, reasonable suspicion developed "to believe that the defendant was armed and potentially dangerous." Id. at 1054. The supreme court held that the pat down of the bulge under the defendant's shirt was permissible under Lightbourne. Id.
We followed Lightbourne and Rawlings in State v. Doyle, 615 So.2d 871 (Fla. 4th DCA 1993).[3] In that case, after a traffic stop for a broken headlight, an officer approached the defendant sitting in the front passenger seat of the automobile. Id. at 872. The defendant "was acting very nervous" and "looking around constantly." When the officer asked him the name of the driver, the defendant "became very defensive." Id. The defendant "was starting to put his hands inside his pockets," when the officer "noticed a bulge" in his "left front pants pocket." Id. The officer ordered the defendant out of the car, patted down the bulge, and felt something like a weapon. When the officer pulled the object out of the defendant's pocket, it turned out to be a long metal crack pipe with a Chinese throwing star. Id.
We found in Doyle that the officer's initial approach to the passenger was a consensual encounter. We upheld the frisk based on the officer's reasonable belief that the defendant was armed with a dangerous weapon, a belief that developed during the officer-citizen encounter. Id. at 872-73; see State v. Louis, 571 So.2d 1358, 1359 (Fla. 4th DCA 1990) (upholding limited protective search for weapons on a passenger who exited a car after a traffic *1228 infraction stop and put his hands inside a bulky jacket).
Johnson's conduct in this case is similar to the defendants' actions in Lightbourne and Doyle. The time of day, the bulge in Johnson's pocket, his continuous reaching toward the pocket, his nervousness, his demeanor, and his violent shaking during the interview, when viewed in light of Deputy McDonald's experience, gave rise to a reasonable belief that Johnson was armed and potentially dangerous.
The analytical difficulty in this area arises because it can be hard to distinguish a citizen encounter from an investigatory stop. Some cases turn on the fact that an officer's conduct went beyond a consensual encounter and amounted to an investigatory stop for which there was an inadequate basis. See Weaver v. State, 548 So.2d 1198, 1200 (Fla. 4th DCA 1989); Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989); Sander v. State, 595 So.2d 1099, 1100 (Fla. 2d DCA 1992). This line of authority includes cases where a person tries to evade an officer, who uses minimal force or display of authority to stop him. See, e.g., Johnson v. State, 610 So.2d 581, 583 (Fla. 1st DCA 1992); Daniels v. State, 543 So.2d 363, 365 (Fla. 1st DCA 1989).[4] Some cases indicate that "orders or even requests to remove a hand from a pocket causes a consensual encounter to become a seizure." Harrison v. State, 627 So.2d 583, 584 (Fla. 5th DCA 1993) (citing Johnson, 610 So.2d at 583); see United States v. Burton, 228 F.3d 524, 528 (4th Cir.2000).
Other cases state that it is not "improper for an officer to ask a person to remove his hands from his pockets during a citizen encounter." Lang v. State, 671 So.2d 292, 293 (Fla. 5th DCA 1996); see Sander, 595 So.2d at 1100. Finally, some cases suggest that a pat down transforms a consensual encounter "into a `stop' requiring closer scrutiny." See Sholtz v. State, 649 So.2d 283, 284 (Fla. 2d DCA 1995); Hamilton v. State, 612 So.2d 716, 718 (Fla. 2d DCA 1993). Such cases do not clarify the legal theory supporting a pat down during a police-citizen contact that begins as a consensual encounter.
In Brown v. State, 714 So.2d 1191, 1192 (Fla. 4th DCA 1998), Judge Warner analyzed a consensual encounter as a fluid situation, where developing events led an officer to reasonably believe that the defendant "was going for a weapon." This belief justified an investigative stop.
The unspoken assumption in Brown is that the defendant was carrying a concealed weapon without a license, a criminal violation under section 790.01, Florida Statutes (2000). A reasonable belief that a person is committing such a weapons violation authorizes a temporary detention under the stop and frisk law. See § 901.151(2), Fla. Stat. (2000). This is different from the normal fact pattern of a Terry stop, where the officer's reasonable belief that criminal activity is afoot precedes and justifies the initial stop.
We are bound by Article I, Section 12 of the Florida Constitution to apply Fourth Amendment law "as interpreted by the United States Supreme Court." However, that Court has not directly addressed the issue presented here, in Lightbourne and in Doyle, all cases that began as consensual encounters. Terry authorized a stop and a pat down where an officer observes "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." 392 U.S. at 30, 88 S.Ct. 1868. The Florida *1229 Supreme Court in Lightbourne focused on language in Justice White's concurring opinion in Terry, which suggested that there were "special circumstances" which would authorize a frisk during a consensual encounter. 438 So.2d at 387. The approach in Brown is that an officer's observations during a consensual encounter can give rise to a reasonable belief of both a weapons violation and a potential danger to the officer, which transform the encounter into an investigatory stop, justifying a protective pat down.
The final judgment of conviction is affirmed.[5]
FARMER and STEVENSON, JJ., concur.
NOTES
[1] Appellant Claude Johnson entered a plea of nolo contendere to the felony, possession of cocaine. He reserved his right to appeal the denial of a motion to suppress which, as the trial court ruled, was a "dispositive order" within the meaning of Florida Rule of Appellate Procedure 9.140(b)(2)(A)(i).
[2] While not crucial to the analysis in this case, the third level of police-citizen encounter is an arrest supported by probable cause that a crime has been or is being committed. Popple, 626 So.2d at 186.
[3] Doyle was withdrawn and vacated after petition for habeas corpus was granted in Doyle v. Fogan, 629 So.2d 1091 (Fla. 4th DCA 1994), but was later reaffirmed in State v. Doyle, 644 So.2d 1036 (Fla. 4th DCA 1994).
[4] We do not address the issue of whether Johnson and Daniels remain good law after Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
[5] We do not address the scope of the search, as the parties did not address the issue on appeal.