921 So.2d 873 (2006)
Ronald DELORENZO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-3607.
District Court of Appeal of Florida, Fourth District.
March 8, 2006.
*874 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Ronald Delorenzo appeals from his conviction of possession of cocaine. Delorenzo *875 pleaded no contest to a charge of possession of cocaine while reserving his right to appeal the trial court's ruling on his motion to suppress. Delorenzo filed a motion to suppress arguing that the evidence was obtained as the result of an unlawful search. The motion was denied. The trial court ruled that the motion to suppress was dispositive. We reverse.
At the hearing on the motion to suppress, Officer Paul Vardakis was the only witness. He testified as to the events that occurred the night Delorenzo was arrested. At 3:30 in the morning, Vardakis saw a vehicle in a shopping center parking lot, with its motor running and all of its lights off and someone seated in the driver's seat. Vardakis wanted to make sure the individual was okay, so he approached the legally parked vehicle. Delorenzo's eyes were closed. Vardakis knocked on the window a couple of times which eventually awakened Delorenzo. Once Delorenzo realized Vardakis's presence, he put his hand in his right pocket. Vardakis testified that at that point he thought Delorenzo had a weapon or was trying to hide something. Vardakis repeatedly asked Delorenzo to take his hand out of his pocket. Vardakis testified that Delorenzo's digging was not leisurely, but very aggressive digging in his pocket, which raised Vardakis's suspicion. Delorenzo finally took his hand out of his pocket and then stepped out of the car.
During the hearing, Vardakis testified that he did not recall whether he asked Delorenzo to step out of the car. At his deposition, Vardakis stated that he asked Delorenzo to step out of the vehicle. On cross-examination, Vardakis was asked about this discrepancy. He testified that he could not recall which actually occurred. In its order, the trial court made a factual determination that Delorenzo stepped out of his car upon Vardakis's instruction to do so.
When Delorenzo stepped out of the car, he once again put his hand in his right pocket. Vardakis again directed Delorenzo to take his hand out of his pocket. Vardakis testified that Delorenzo had baggy, carpenter-type pants on and as a result, Vardakis could not see whether there was a bulge. Vardakis did not know whether Delorenzo had a weapon in his pocket and was concerned about his safety. After asking Delorenzo to remove his hand from his pocket, Vardakis asked Delorenzo to consent to a search for officer safety, to which Delorenzo agreed. Vardakis testified that the exchange was as follows: "do you mind if I search you, do you have any weapons on you, for my safety, he said sure." Then Delorenzo stated, "I just have money and matches in my pockets." Vardakis testified that Delorenzo knew he was referring to his pockets. Instead of doing a "pat down," Vardakis proceeded to search Delorenzo, pulling out a pack of matches. As the matches were pulled out, a green baggy containing a white powdery substance which was later determined to be cocaine, fell to the ground.
In denying Delorenzo's motion to suppress, the trial court judge stated as follows:
The Court finds that the encounter consisted of an officer seeing a citizen sitting in a car with the engine running, which indicated, first of all, that he may be ill, he may be under the influence of an alcoholic beverage, or a controlled substance.
So, for the officer just to ignore the fact that the Defendant is asleep or passed out, and may be suffering from carbon monoxide poisoning, I think they have a right to knock on the window.
When he knocked on the window, the defendant put his hand into his pocket, *876 and it is a clear indication, based on the officer's experience, that the defendant may be armed. . . .
So, at this point, when the officer asked him to step out, we have a reasonable, articulable suspicion, based on his experience, that the defendant may be under the influence of an alcoholic beverage, or a controlled substance, or may be armed.
So, the step of asking him to step out was not a 4th amendment violation.
The Court further finds that the officer says he gave consent. The Defendant never testified otherwise.
So, the Court finds that it was a consentual (sic) search, and that the Defendant gave him legal consent to search, and during that consentual (sic) search, the cocaine was found. The motion to suppress is denied.
The trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence in ruling on a motion to suppress. Although we are required to accept the trial court's determination of the historical facts, a defendant is entitled to a de novo review of whether the application of the historical facts to the law establishes an adequate basis for the trial court's finding of reasonable suspicion. See Lee v. State, 868 So.2d 577, 579 (Fla. 4th DCA 2004); see also Curtis v. State, 748 So.2d 370, 371 (Fla. 4th DCA 2000) (en banc).
Delorenzo argues that the encounter between himself and Vardakis went from a consensual encounter to an investigatory stop when Vardakis demanded that Delorenzo pull his hand out of his pocket. Delorenzo further argues that at the time of the investigatory stop, Vardakis did not have a reasonable suspicion that Delorenzo had committed, was committing, or was about to commit a crime, which is required for an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Delorenzo further asserts that because Vardakis did not have a well-founded, articulable suspicion of criminal activity at the time that he directed Delorenzo to remove his hand from his pocket and step out of his car, that notwithstanding his consent to a search for weapons the discovery of the cocaine must be suppressed. We agree.
There are three levels of police-citizen encounters. See Johnson v. State, 785 So.2d 1224, 1226 (Fla. 4th DCA 2001). The three levels are: (1) consensual encounter where a citizen voluntarily complies with a police request or chooses to ignore it, (2) an investigatory stop which requires a "well-founded, articulable suspicion of criminal activity," and (3) "an arrest supported by probable cause that a crime has been or is being committed." Id. at 1226.
Vardakis testified that while he was still in his car, Delorenzo noticed Vardakis's presence and put his hand in his pocket. It was at this point that Vardakis asked Delorenzo to take his hand out of his pocket. Ordering an individual to take his hand out of his pocket ordinarily turns a consensual encounter into a stop. See Lee, 868 So.2d at 580; Harrison v. State, 627 So.2d 583, 584 (Fla. 5th DCA 1993). There are times during an officer's encounter with an individual, when the officer's observations may lead to a belief that the individual is armed and dangerous, a belief the officer did not hold when the encounter was initiated. Under certain factual circumstances this court has held that concern for an officer's safety may create reasonable suspicion warranting an investigatory stop. See Johnson, 785 So.2d 1224; see also Brown v. State, 714 So.2d 1191 (Fla. 4th DCA 1998). However, as pointed out in Brown, not every *877 "consensual encounter may escalate to an investigative stop simply because the officer generally has safety concerns." Brown, 714 So.2d at 1193.
In Brown and Johnson, this court affirmed the trial courts' denials of the motions to suppress under factual scenarios in which the initial encounters with the defendants were consensual, but because the law enforcement officers' concern for their safety and the conduct of the defendants created a reasonable suspicion, the consensual encounters were properly converted into investigatory stops.
In Brown, an officer was patrolling a high crime area when he witnessed Brown yell into a vehicle stopped at a traffic light. Brown then came up to the officer's car in an excited state telling the officer he was trying to get a ride home. Brown, 714 So.2d at 1191. The officer knew Brown from prior contacts and arrests, and when he asked Brown his name, Brown gave the officer a fictitious one. Id. at 1192. It was upon observing these facts in addition to the fact that Brown had his hands in his pockets, that the officer asked Brown to remove his hands from his pockets. Id. Brown complied but then reached into the front of his pants, underneath his waistband and turned away from the officer. Id. The officer testified that at that time, Brown was not free to leave. Id. At that point, the officer was in fear that Brown was going for a weapon. Id. The officer then reached around to grab Brown's hands. Id. The officer and Brown fell to the ground as the officer yelled to Brown to take his hands out of his pants. Id. Eventually, the officer gained control of Brown and placed him under arrest for resisting arrest. Id. A subsequent search of Brown revealed drugs. Id. The trial court determined that it was after Brown removed his hands from his pockets and turned around that a stop occurred and that the officer had reasonable suspicion to believe that Brown was going for a weapon and endangering the safety of the officer and the detention was lawful. Id. This court agreed that a stop occurred and based on the facts, the officer had the required reasonable suspicion. Id.
In Johnson, the pertinent facts noted by this court are as follows:
Deputy Alex McDonald, an eighteen year veteran of the Broward County Sheriff's Office, was on routine patrol at about 3:51 a.m. on October 5, 1999. He saw appellant Claude Johnson standing by a pay phone at a twenty-four hour gas station. Johnson was staring off into space. McDonald thought that Johnson looked lost, as if he had wandered off from the nearby hospital or nursing home. McDonald, during his seven years of patrolling that area, had encountered similar incidents with patients wandering the area.
After watching Johnson for a few minutes from the other side of the parking lot, the deputy drove his patrol car over to Johnson. At this point, he did not suspect Johnson of any criminal activity.
Johnson began to walk away from the cruiser. The deputy got out of the car. He called over, "Excuse me, sir. Can I speak to you a minute?" He did not order Johnson to stop. Johnson walked over and spoke to Deputy McDonald as they stood next to the pay phone.
The deputy asked Johnson his name and where he lived and began to fill out a field interview card. During this brief conversation, Johnson shook violently, which Deputy McDonald found to be unusual. Johnson appeared to be nervous. He had a bulge in his front left pocket, that "seemed to fill most of his pocket." He kept reaching toward the bulge. Concerned that Johnson might have a weapon in his pocket, Deputy *878 McDonald terminated the conversation and directed him to assume the pat down position.
Johnson complied. As soon as the deputy reached toward the front left pocket of his jeans, Johnson tried to break away and run. During the ensuing struggle, Johnson continued to reach for his pocket, amplifying the deputy's concern that he had a weapon. Unable to control Johnson's hands, the deputy took him to the ground and handcuffed him.
Deputy McDonald found two cigarette packs in Johnson's front left pocket. One pack was full of cigarettes. The other contained a glass tube with Brillo-like shavings and a white residue. The residue was later determined to be cocaine.
Johnson, 785 So.2d at 1225-26.
The factual scenarios in Brown and Johnson are significantly different than the facts of the instant case. In this case, Vardakis observed Delorenzo with his eyes closed in a car running with all of its lights off, in a shopping center parking lot. Delorenzo was awakened by the officer knocking on his window. When he saw the officer, Delorenzo put his hand in his pocket. At the point that Delorenzo complied with the request that he remove his hand from his pocket, Vardakis had no reasonable basis to fear for his safety. Vardakis did not see a bulge in Delorenzo's pocket and he saw no threatening gesture. Furthermore, Vardakis did not testify to any observation of Delorenzo which would support a reasonable suspicion that Delorenzo was ill or under the influence of alcohol or a controlled substance. To then order Delorenzo out of his vehicle and order him once again to remove his hand from his pocket constituted a stop without the requisite reasonable suspicion to make the detention lawful.
The state relies on State v. Baez, 894 So.2d 115 (Fla.2004), to support the position that there were sufficient facts upon which the officer could have a reasonable articulable suspicion. We disagree. The issue in Baez is different than that in the present case. In Baez, the Florida Supreme Court found that no stop or seizure occurred where a police officer found Baez slumped over the wheel of his vehicle in a location where he should not normally have been, a dimly lit warehouse area at night. Baez, 894 So.2d at 117. Baez got out of his car voluntarily after the officer had knocked on his window and asked if he was all right. Id. at 115-16. After exiting his car, the officer asked for Baez's license and ran a check on it, at which point it was discovered that there was an outstanding warrant for his arrest. Id. at 116. The Court held "that Baez was not unreasonably detained while the officer ran a warrants check on Baez's driver's license." Id. While the court determined that no stop or seizure had occurred, it also said that "the officer did have a reasonable basis and reasonable suspicion to investigate Baez further." Id. at 117. This is the language relied upon by the state in the instant case. In particular, the court said that where Baez was slumped over in his van in an unusual spot, "[i]t was not unreasonable for the officer to proceed with the computer check when he had not yet eliminated reasonable concern and justified articulable suspicion of criminal conduct." Id. However, this language relied upon by the state is dicta because Baez did not involve whether the officer had reasonable suspicion. Therefore the state's reliance on it is misplaced.
Having found that Vardakis's interaction with Delorenzo went from a consensual encounter to an investigatory stop without the required reasonable suspicion, we conclude the investigatory stop was *879 illegal. The state argues and the trial court found that during the investigatory stop Delorenzo consented to a search. Consent given after police conduct determined to be illegal is presumptively tainted and deemed involuntary, unless the state proves by clear and convincing evidence that there was a clear break in the chain of events sufficient to dissolve the taint. See Scott v. State, 696 So.2d 1335, 1336 (Fla. 4th DCA 1997); see also Faulkner v. State, 834 So.2d 400, 403 (Fla. 2d DCA 2003). In the instant case, the state did not prove a break in events from the time Vardakis asked Delorenzo to remove his hand from his pocket while Delorenzo was in the car until Vardakis ordered Delorenzo out of the car and asked him if he could search him. With no break in the events, any consent Delorenzo provided remained tainted and cannot vitiate the illegality.
We reverse the trial court's order denying the motion to suppress and since the motion is dispositive, we direct that Delorenzo be discharged.
Reversed.
KLEIN, J., concurs.
WARNER, J., concurs specially with opinion.
WARNER, J., concurs specially.
I concur in the result. When the officer ordered Delorenzo to take his hand out of his pocket, the consensual encounter turned into a stop. See Harrison v. State, 627 So.2d 583 (Fla. 5th DCA 1993). If that was not enough, the officer ordered Delorenzo out of the vehicle, which also constitutes a stop for Fourth Amendment analysis. See Popple v. State, 626 So.2d 185 (Fla.1993). At either point, the officer did not have a founded suspicion that a crime was being committed, and he made no observations to support a reasonable belief that Delorenzo was armed and dangerous. See Johnson v. State, 785 So.2d 1224 (Fla. 4th DCA 2001). The mere thrusting of one's hand in one's pocket in front of a police officer does not constitute conduct which supports a founded suspicion that an individual is armed and dangerous.