TAYLOR, J.
In this appeal from the denial of the defendant’s motion to suppress, the defendant argues that he was unlawfully detained when a police officer ordered him to turn off his car engine when the officer noticed him asleep in his parked car, with the motor running, during early morning hours in a shopping mall parking lot. The appeal followed the defendant’s no contest plea to felony driving with a suspended license (DWLS) and violation of probation. Based on Popple v. State, 626 So.2d 185 *1195 (Fla.1993), we hold that the officer’s direction that defendant turn off his car engine constituted a seizure, without the requisite reasonable suspicion, and reverse the order denying the motion to suppress.
At the hearing on the defendant’s motion to suppress, Lauderhill Police Officer Michael Horn testified that while patrolling the Lauderhill Mall, he encountered the defendant in the parking lot at 4:15 a.m. The mall was closed and, as usual, there were no other vehicles in the parking lot. He saw that the defendant was asleep on the driver’s side of his car and the engine was running. Officer Horn said that he approached the vehicle to make contact with the defendant and make certain that he was not injured or sick. He explained that he was concerned because it was an unusual hour for a car to be in the parking lot and the defendant appeared to be asleep in the running car.
Officer Horn could not recall whether the window was up or down or what he did to awaken the defendant; after failing to respond initially, the defendant woke up and the officer made contact with him. The first thing the officer did was order the defendant to turn off his car. The defendant complied. The officer said he ordered the defendant to turn off the car for his safety and for the defendant’s safety. He explained that he did not want the defendant to drive off, or if he was injured or sick, to get scared and throw the car into gear and accidentally drive into whatever was in front of him. The officer did not testify about any specific facts which made him believe that the defendant posed a danger to the officer.
Officer Horn asked the defendant for identification, and the defendant complied. The officer then asked the defendant if he was okay and if there was a problem. The defendant responded that he was parked in the parking lot because he could not go home to his apartment; he drove around and then fell asleep in the mall parking lot. Officer Horn said that the defendant never expressed any reservations about answering his questions or providing his identification and that he was “compliant the whole time.” Using the defendant’s identification, Officer Horn ran a computer warrant check. This revealed that the defendant had a suspended license as a habitual traffic offender and that he was on probation for felony driving with a suspended license. Officer Horn placed the defendant under arrest and issued him a citation for DWLS (habitual offender).
On cross-examination, Officer Horn testified that when he approached the defendant in the parking lot, he was not responding to any calls relating to criminal activity, drug transactions, or violence. He acknowledged that he did not observe the defendant doing anything illegal and that he did not know about the defendant’s suspended license until after he ran the NCIC check. The officer also said that he did not see any signs that the defendant was impaired; his speech was not slurred and he did not smell of alcohol.
The trial court denied the defendant’s motion to suppress, determining that the officer’s actions did not rise to the level of an unconstitutional stop or seizure. Citing State v. Baez, 894 So.2d 115 (Fla.2004), the court found that Officer Horn was motivated by concerns that the defendant might be in need of assistance after he discovered him sleeping behind the wheel of his car with the motor running in a desolate parking lot. The court reasoned that such a scenario usually indicates some sort of problem, such as intoxication or fatigue, or signals possible danger from carbon monoxide gases from the running motor. The court concluded that the officer acted prudently in ordering the defendant to shut off his engine to protect the safety of *1196 the defendant and others. After pleading no contest to felony driving while his license was revoked and violating probation based on the new substantive charge, the defendant filed this appeal.
Defendant does not dispute that Officer Horn was justified in approaching his vehicle to conduct a routine check and engage in a consensual interaction with him. Instead, he challenges the officer’s instruction to turn off the engine as an unreasonable seizure. He argues that the officer’s actions constituted a “show of authority” that turned the consensual encounter into an unlawful detention that was not based on reasonable suspicion of criminal activity. He contends that everything that followed, including asking for his identification and running the computer check, led to discovery of “fruit of the poisonous tree.” The state responds that the officer’s request to shut off the engine did not transform the consensual encounter into a seizure.
“We review orders on motions to suppress to determine whether the trial court’s factual findings are supported by competent substantial evidence and review legal issues de novo.” State v. Young, 971 So.2d 968, 971 (Fla. 4th DCA 2008) (citing Thomas v. State, 894 So.2d 126, 136 (Fla.2004)). “When considering a motion to suppress, a court is required to consider the ‘totality of [the] circumstances’ that led to the discovery of evidence.” State v. Hendrex, 865 So.2d 531, 533 (Fla. 2d DCA 2003) (quoting State v. Butler, 655 So.2d 1123, 1128 (Fla.1995)) (alteration in original). “ ‘A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.’ ” Day v. State, 29 So.3d 1178, 1179 (Fla. 4th DCA 2010) (quoting Tenghergen v. State, 9 So.3d 729, 733 (Fla. 4th DCA 2009)).
The Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution protect against unreasonable searches and seizures. In deciding this appeal, we must first address whether a seizure occurred: whether the initial consensual encounter between the officer and the defendant escalated into an investigatory stop or seizure when the officer ordered the defendant to turn off his car engine. If the encounter remained consensual, then the Fourth Amendment and our state constitutional provisions are not implicated.
There are three levels of police-citizen encounters. Popple, 626 So.2d at 186; Delorenzo v. State, 921 So.2d 873, 876 (Fla. 4th DCA 2006) (citing Johnson v. State, 785 So.2d 1224, 1226 (Fla. 4th DCA 2001)). The first, involving only minimal police contact, is a consensual encounter. Popple, 626 So.2d at 186. During a consensual encounter, which does not invoke constitutional safeguards, “a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them” and freely leave. Id. The second type of encounter, described in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is an investigatory stop, where “a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.” Id. The officer must have “ ‘a reasonable, articulable suspicion that criminal activity is afoot.’ In order to satisfy the reasonable suspicion standard, ‘[t]he officer must be able to articulate more than an” inchoate and unparticularlized suspicion or ‘hunch’ “of criminal activity.’ ” Mitchell v. State, 955 So.2d 640, 642 (Fla. 4th DCA 2007) (quoting Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S.Ct. 673, *1197 145 L.Ed.2d 570 (2000)) (alteration in original) (internal citations omitted). A concern for officer safety may also establish reasonable suspicion to support an investigatory stop, but “not every ‘consensual encounter may escalate to an investigative stop simply because the officer generally has safety concerns.’ ” Delorenzo, 921 So.2d at 876-77 (quoting Brown v. State, 714 So.2d 1191, 1193 (Fla. 4th DCA 1998)). The third type, an arrest, which is not at issue here, requires probable cause. See Popple, 626 So.2d at 186.
In Popple, the Florida Supreme Court held that an officer’s request that an occupant of a parked car step out of his vehicle was a “seizure” of the occupant requiring reasonable suspicion. Id. at 188. There, the defendant was sitting in a legally parked car in a desolate area when a deputy approached him. Id. at 186. The deputy noticed the defendant acting nervously and making furtive movements, so he asked him to step out of his vehicle for officer safety. Id. When the defendant opened the door, the deputy saw a cocaine pipe in plain view on the floorboard of the car. Id. The officer arrested the defendant and seized the cocaine pipe and several cocaine rocks incident to the arrest. Id. The supreme court quashed the district court’s affirmance of the defendant’s drug convictions and remanded with directions to reverse the convictions. Id. at 188.
Discussing the difference between a consensual encounter and a seizure, Popple stated that “[although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity.” Id. 187-88 (citing State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989)). The court noted that it “has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart.” Id. at 188 (citing Jacobson v. State, 476 So.2d 1282 (Fla.1985)). In reversing the defendant’s drug convictions, the court concluded that “[w]hether characterized as a request or an order ... Deputy Wilmoth’s direction for Popple to exit his vehicle constituted a show of authority which restrained Popple’s freedom of movement because a reasonable person under the circumstances would believe that he should comply.” Id.
Similarly, in this case, Officer Horn’s direction for the defendant to turn off his engine constituted a show of authority which restrained the defendant’s freedom of movement. An order to shut off one’s' car is as much a restraint on movement as an order to step out of the car. Both orders constitute a seizure because they convey to a reasonable person under the circumstances that he or she must comply and is not free to end the encounter and drive away. See Taylor v. State, 658 So.2d 173, 173 (Fla. 5th DCA 1995) (holding that when an officer pulled up behind the defendant, who was parked in a driveway with the motor running, and ordered him to turn off his motor and produce his driver’s license, the defendant was improperly seized and the search that followed was illegal).
Other vehicle-related police conduct found by Florida courts to constitute a seizure or detention include: using a police car to block the path of a car, Stennes v. State, 939 So.2d 1148, 1149 (Fla. 4th DCA 2006); shining a flashlight or spotlight on a defendant’s car, Leroy v. State, 982 So.2d 1250, 1252 (Fla. 1st DCA 2008); displaying a weapon or physically touching the per *1198 son, State v. Dixon, 976 So.2d 1206, 1209 (Fla. 4th DCA 2008); ordering a driver in a stopped vehicle to roll down his window, Greider v. State, 977 So.2d 789, 792-93 (Fla. 2d DCA 2008); and directing a defendant to remove his hand from his pocket, Delorenzo, 921 So.2d at 876.
We have been unable to find a case on all fours with this one. Other cases involving orders to turn off the car motor have usually contained additional facts and circumstances, such as ordering the defendant out of the caí-, see Delorenzo, 921 So.2d at 878, or blocking the defendant’s path, see Taylor, 658 So.2d at 173. However, as Justice Pariente pointed out in her concurring opinion in Golphin v. State, 945 So.2d 1174, 1197 (Fla.2006) (Pariente, J., concurring), “[tjhere are times when one circumstance among the totality converts what would otherwise be a consensual encounter into a detention.” We conclude that ordering a citizen to shut off the car engine is such a circumstance and that it alone constitutes a seizure.
When police conduct amounts to a seizure, there must be a prior justification in the form of articulable facts and circumstances suggesting criminal activity. All seizures, including those involving only a brief detention, implicate the Fourth Amendment and must be based on a reasonable suspicion of criminal wrongdoing. See Caldwell v. State, 41 So.3d 188, 195 (Fla.2010). It is undisputed that the order to shut off the car engine in this case was not supported by a reasonable suspicion of criminal activity. Officer Horn did not testify about any facts that gave him a well-founded suspicion that the defendant had committed, was committing, or was about to commit a crime. Therefore, we must next decide whether the seizure in this ease was reasonable as based upon some recognized exception for Fourth Amendment purposes.
A temporary detention of an individual may be justified by an officer’s specific concern for his own safety. Terry, 392 U.S. at 30-31, 88 S.Ct. 1868. A traffic stop is an especially dangerous situation for an officer, Michigan v. Long, 463 U.S. 1032, 1048, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and it would be unreasonable to require police officers to take unnecessary risks in the performance of their duties. Terry, 392 U.S. at 23, 88 S.Ct. 1868. In determining whether an officer acted reasonably under the circumstances, courts must give due weight to the specific reasonable inferences which officers are entitled to draw from the facts in light of their experience and ask whether a “reasonably prudent [person] in the circumstances would [have been] warranted in the belief that his safety or that of others was in danger.” Id. at 27, 88 S.Ct. 1868. Although there may be factual scenarios wherein an officer will have personal safety concerns that justify ordering a motorist to shut off the car, no evidence was presented in this case showing a specific concern for officer safety. Here, there were no furtive movements, nervous reactions, or any circumstances to warrant a belief that the officer’s safety was in danger, and no facts showing that the order to shut down the engine was reasonably necessary to protect the officer’s safety.
A temporary detention may also be based on an officer’s discharge of his “community caretaking” duties. See Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (stating that local police officers are charged with “community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.”). In keeping with such community caretaking responsibilities, Officer Horn could properly check the defendant’s status and condition to de *1199 termine whether he needed any assistance or aid. This type of limited contact has been deemed a reasonable and prudent exercise of an officer’s duty to protect the safety of citizens. Lightbourne v. State, 438 So.2d 380, 388 (Fla.1983). Thus, even without reasonable suspicion of criminal activity, a police officer may detain an individual pursuant to a community care-taking function under' certain circumstances. Commonwealth v. Evans, 436 Mass. 369, 764 N.E.2d 841, 844 (2002) (holding that, where the defendant was pulled over in the breakdown lane at 11:30 p.m. with his right blinker activated, the officer properly exercised his community caretaking function to ascertain whether the defendant needed assistance when he activated his blue lights, pulled up behind the defendant’s car, and requested the defendant’s license and registration); Commonwealth v. Leonard, 422 Mass. 504, 663 N.E.2d 828, 830-32 (1996) (holding that a state trooper was properly performing his duty when he opened the defendant’s unlocked car door after the defendant pulled into the breakdown lane of traffic and failed to respond to the trooper’s attempts to elicit a response from her after he repeatedly knocked on her window; the circumstances suggested that the defendant may have been ill and needed assistance); Tex. Dep’t of Pub. Safety v. Svoboda, No. 04-05-00796-CV, slip op. at 3, 2006 WL 1684793 (Tex.App. June 21, 2006) (holding that, where the defendant was driving twenty miles per hour under the speed limit in the early morning hours and came to a complete stop on the side of the road, the officers properly exercised their community caretaking function in approaching the defendant’s vehicle, as they had a legitimate concern for the defendant’s welfare); White v. State, No. 2-07-234-CR, slip op. at 2-3, 2008 WL 1867139 (Tex.App. Apr.24, 2008) (holding that the officer’s exercise of her community caretaking function was unreasonable, where there was no danger that the defendant could fall asleep while driving and the officer did not express this fear; instead, the officer emphasized that the defendant’s actions were suspicious).
Here, the record is devoid of facts showing that the officer’s instruction to shut off the car was reasonably based on concerns for the defendant’s safety or was necessary to determine if he needed any aid or assistance. Officer Horn testified that he issued the order immediately after approaching the vehicle and awakening the defendant. The order to shut off the car was given after the defendant was awakened and before the officer had developed any facts indicating whether the defendant was in difficulty or distress. The officer conceded that he did not have a reasonable belief that the defendant was suffering from an illness or intoxication. Further, he did not furnish any facts or circumstances which suggested that the defendant was disoriented and might drive forward and strike something in a startled stupor. Officer Horn testified about only a generalized, rather than a specific, concern about potential danger from the running motor.[1] As we held in Delorenzo, the fact that a motorist is asleep in his car with the motor running in an empty parking lot at night does not, without more, provide a reasonable basis for seizing the motorist.[2]
*1200 State v. Baez, 894 So.2d 115 (Fla.2004), on which the trial court and the state relied, is distinguishable. There, the officer responded to a report of a suspicious vehicle and discovered the defendant, Robert Baez, slumped over the wheel of a parked van in an abandoned warehouse area at night. Id. at 115. The officer knocked on the window, concerned that Baez, who appeared asleep, might need medical attention. Id. at 115-16. Baez immediately woke up and the officer asked him if he was all right. Id. at 116. Baez opened the door and got out of his car. Id. “The officer did not request or demand that Baez step out of the vehicle.” Id. (emphasis supplied). Baez then gave the officer his driver’s license. When a computer check revealed that Baez had an outstanding warrant, he was arrested. Id. Noting that “Baez left his car on his own volition,” and voluntarily handed over a driver’s license, the court held that Baez was not unreasonably detained while the officer ran a warrants check on his driver’s license. Id. at 116-17.
This case is not controlled by Baez. There, the court emphasized that Baez had voluntarily exited his car before he was asked for the identification he produced. As Justice Wells observed when distinguishing Popple in his concurrence, “there was nothing which converted this consensual encounter and routine law enforcement procedure into a seizure.” Baez, 894 So.2d at 119 (Wells, J., concurring). Here, however, the officer ordered the defendant to turn off his engine before asking for his identification. As we previously explained, the order to turn off the car was a seizure, similar to the order to exit the vehicle in Popple. Because the seizure was not based on a reasonable suspicion of criminal activity or a specific concern for officer safety or the health and safety of the defendant or others, we reverse the trial court’s order denying the motion to suppress and remand for further proceedings.

Reversed and Remanded

WARNER, J., concurs.
MAY, J., dissents with opinion.

. Although the trial court speculated that the danger of carbon monoxide poisoning might have existed during the encounter, the state did not present any evidence regarding the likelihood of such a safety risk.

. To sustain the state’s position that the officer’s order was a reasonable safety measure, where there were no specific facts indicating a safety risk, would give law enforcement officers authority to routinely order citizens to turn off their motors anytime they are seen *1200 sleeping in their cars with the motor running at an unusual time or place.