959 So.2d 403 (2007)
Darious HOLLOMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3294.
District Court of Appeal of Florida, Second District.
June 20, 2007.
*404 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Darious Holloman seeks review of his judgment and sentence for possession of *405 cocaine. His motion to suppress the cocaine was denied and he pleaded no contest to the charge, reserving the right to appeal the denial of suppression, which the parties stipulated was dispositive. We reverse.[1]

Evidence Adduced At The Hearing On The Motion To Suppress
At the hearing on the motion to suppress, the evidence showed that Mr. Holloman and his companion, William Turner, while driving a gold Dodge Intrepid late one evening in February 2005, had come under surveillance by the St. Petersburg Police Department. Providing a description of the occupants, their clothing, and the tag number of the vehicle, the surveillance unit requested a uniformed patrol officer to make a traffic stop because numerous reckless driving infractions had been observed, as well as some suspected drug transactions. The gold Intrepid fled from the traffic stop that Officer Michael Kovascev attempted to make and was lost to law enforcement. However, later that night, Officers Michael Carter and Jason Irvin, who were at a St. Petersburg motel in a known drug area and just completing an investigation of a different matter, observed Mr. Holloman and Mr. Turner getting out of a taxi at the motel. These two officers had also been monitoring the surveillance unit's broadcasts and noted that the two individuals matched the description of the persons in the gold Intrepid. As the pair of suspects were going into a room, the officers initiated a "citizen contact" with Mr. Turner, who was still outside the room. Upon inquiry, the man told Officer Carter that his name was "Ricky Turner." Officer Carter knew Mr. Turner from two prior contacts and also knew that "Ricky" was not his real name.
The officers began to arrest Mr. Turner, who turned around and began pounding on the door of the motel room, which Mr. Holloman then opened. As the officers were trying to keep Mr. Turner from fleeing into the room, he reached into his pocket and handed something off to Mr. Holloman. The officers could not tell at this point what had been handed off. Mr. Holloman went to the back of the room and tossed what he had been handed into the bathroom. As he did so, the officers saw that the objects were two opaque M & M candy containers. The officers knew that crack cocaine drug users and dealers commonly used this kind of container to store their crack; in fact, one officer testified that he had seen more crack cocaine than candy in this kind of container. After Mr. Holloman tossed the candy containers into the bathroom, he returned to the doorway and, using both his hand and the door, succeeded in pushing the officers out of the doorway and closing the door.
The officers finished securing Mr. Turner, turned him over to backup officers, entered the motel room, and arrested Mr. Holloman. They then searched the bathroom, recovered the M & M containers, and opened them to find that they did contain crack cocaine. They also found a marijuana cigarette in plain view in the bathroom. The trial court denied suppression on the basis that exigent circumstances existed surrounding the arrest of Mr. Turner and the officers had the right to seize the opaque M & M containers because they were in plain view.[2] Only *406 the cocaine in the candy containers was the subject of Mr. Holloman's motion to suppress.

Analysis
A person's home "is accorded the full range of Fourth Amendment protections." Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). This protection is afforded because there is an expectation of privacy in one's dwelling that our society recognizes as justified to protect the occupant against an unreasonable entry. Thus, a nonconsensual entry into a home, a motel room, or other residence constitutes a search. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Accordingly, "[i]t is a `basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Therefore, the first question to be answered is whether Mr. Holloman's motel room is afforded the same constitutional protection as his home.
At the suppression hearing, Mr. Holloman testified without contradiction that he was a guest at the motel and had not been asked to leave. The constitutional rights and privileges that apply to those who occupy private permanent dwellings also apply to those who occupy a motel room when the "occupant is there legally, has paid or arranged to pay, and has not been asked to leave." Turner v. State, 645 So.2d 444, 447 (Fla.1994); Vasquez v. State, 870 So.2d 26 (Fla. 2d DCA 2003); Gilbert v. State, 789 So.2d 426, 428 (Fla. 4th DCA 2001). Thus, Mr. Holloman provided sufficient evidence of an expectation of privacy in the motel room to render the entry and search presumptively unreasonable unless the State proved an exception to the warrant requirement.
"Absent consent, a search warrant, or an arrest warrant, a police officer may enter a private home only when there are exigent circumstances for the entry." Tillman v. State, 934 So.2d 1263, 1272 (Fla.2006) (citing Taylor v. State, 740 So.2d 89, 90 (Fla. 1st DCA 1999)). Although the chief evil the Fourth Amendment was designed to protect against was the physical entry into a person's home, Payton, 445 U.S. at 585, 100 S.Ct. 1371, when the State can establish exigent circumstances, it is reasonable for law enforcement officers to cross the home's threshold without a warrant. Id. at 590, 100 S.Ct. 1371; Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Riggs v. State, 918 So.2d 274, 278 (Fla.2005). An exigent circumstance may be "a `grave emergency' that `makes a warrantless search imperative to the safety of the police and of the community.' An entry is considered `imperative' when the government can show a `compelling need for official action and no time to secure a warrant.'" Riggs, 918 So.2d at 279 (quoting Illinois v. Rodriguez, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), and Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)). These circumstances include the pursuit of a fleeing felon. Riggs, 918 So.2d at 279 (citing Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)).
"The circumstances in which the Supreme Court has applied the exigent circumstances exception are `few in number and carefully delineated.' They include pursuing a fleeing felon, preventing the destruction of evidence, searching incident *407 to a lawful arrest, and fighting fires." Tillman, 934 So.2d at 1272 (citing Riggs v. State, 918 So.2d 274, 279 (Fla.2005)).
Mr. Holloman contends that the State did not carry its burden in proving exigent circumstances because it presented no evidence of the delay between Mr. Turner's arrest outside the room and the officers' entry into the room to look for him. We find this argument unpersuasive. Officer Irvin testified that backup officers were called while he and Officer Carter were attempting to arrest Mr. Turner. The backup arrived and took control of Mr. Turner, immediately after which he and Officer Carter entered the motel room in pursuit of Mr. Holloman. According to Officer Irvin, everything happened all of a sudden. The clear inference from this testimony is that the officers entered the room as quickly as possible and any delay was minimal. We conclude that the State proved exigent circumstances regarding Mr. Holloman. Because the officers were in pursuit of a person who had just committed a battery on a law enforcement officer, their warrantless entry into the motel room was not in violation of the Fourth Amendment.
Having concluded the officers' entry into the motel room was proper, we next determine whether the officers exceeded the authorized scope of the search. Because the circumstances of the officers' entry into the motel room were justified and they properly arrested Mr. Holloman for committing a battery on a law enforcement officer, the officers were permitted to perform a cursory search of the room where the arrest took place. See State v. Futch, 715 So.2d 992 (Fla. 2d DCA 1998) (holding that a warrantless search incident to a lawful arrest is limited to the area within the immediate control of the defendant). This authorization does not mean, however, that officers are entitled to search any closed container in any room.
In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that a warrantless search of the defendant's entire house incident to the arrest was impermissible under the Fourth Amendment. The touchstone of the Fourth Amendment is reasonableness and it is reasonable for the arresting officer to search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." Id. at 763, 89 S.Ct. 2034. However, there is no similar justification "for routinely searching any room other than that in which an arrest occursor, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." Id.
Pursuant to Chimel and Futch, the law enforcement officers possessed authority to search the area within Mr. Holloman's immediate control and to seize any weapon or evidence pertaining to the crime of battery on a law enforcement officer for which he was being arrested. They also could seize any other incriminating item if legally justified, for example, by the plain view exception. In this instance, however, the candy containers were seized in another room, an area not within the immediate control of Mr. Holloman at the time of his arrest.
Our law requires a warrant to search a person's home, unless the exigencies of the situation "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 393-94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The instant situation lacked sufficient exigencies to eliminate the need for a warrant because at the time the containers were seized, Mr. Holloman was already under arrest in another room. There was, thus, no danger that he might dispose of the contents or any other reason to excuse the need for a warrant.
*408 Although not necessary to our disposition, we note that although the officers may have had a suspicion, even a reasonable suspicion, that these particular containers might contain contraband, they had no probable cause to conclude that the contents were, in fact, contraband. On their face, the containers held innocuous candy. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (reiterating that incriminating nature of item seized in plain view must be immediately apparent). Because the officers lacked probable cause to believe the containers held contraband and because the incriminating nature of the contents was not immediately apparent, they could not seize them, even though the containers themselves were in plain view.
Because the seizure and search of the M & M containers, as to Mr. Holloman, did not fall within an exception to the Fourth Amendment's warrant requirement, we must reverse the conviction for possession of cocaine.
Reversed and remanded.
STRINGER, J., Concurs.
FULMER, C.J., Concurs in result only.
NOTES
[1] Based on the same episode that gave rise to the charge of possession of cocaine and his motion to suppress, Mr. Holloman was also charged with and pleaded no contest to battery on a law enforcement officer. Mr. Holloman appeals only the judgment and sentence for possession of cocaine.
[2] We do not comment upon or resolve any potential claim by Mr. Turner of a violation of his Fourth Amendment rights. The analysis of such a claim would likely differ. Here, we review only Mr. Holloman's claim that his Fourth Amendment right was violated.