989 So.2d 16 (2008)
Derrious Auntrell OLIVER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-2743.
District Court of Appeal of Florida, Second District.
June 18, 2008.
Rehearing Denied August 22, 2008.
James Marion Moorman, Public Defender, and Clark E. Green, Assistant Public Defender, Bartow, for Appellant.
*17 Bill McCollum, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Derrious Auntrell Oliver appeals a judgment withholding adjudication and imposing a twenty-four month term of probation pursuant to his guilty plea to one count of possession of cocaine. Mr. Oliver reserved the right to appeal his dispositive motion to suppress the cocaine. Because the trial court erred in denying the motion to suppress, we reverse.
Two police officers responded to an anonymous tip that drugs were being sold from a backyard shed. Upon arriving at the designated address, the officers walked toward a four-foot-high chain-link fence surrounding the entire property, including the shed. Standing outside the fence, an officer witnessed Mr. Oliver drop a baggie on the ground while sitting outside the shed. The officer also witnessed Mr. Oliver's codefendant, Donald Mason, move his hands in a "furtive motion" while standing inside the shed. The officer testified at the suppression hearing that although she could not identify the contents of the baggie or the substance that Mr. Mason was brushing off of his hands, her training and experience suggested that the baggie contained either marijuana or cocaine. Because Mr. Oliver's and Mr. Mason's movements indicated to the officers that they were trying to destroy evidence, they entered the yard without a warrant. The officers seized the baggie and arrested Mr. Oliver because they determined the baggie contained crack cocaine.
At the suppression hearing, Mr. Oliver argued that the officers conducted an illegal warrantless search because no exception to the warrant requirement existed. The trial court denied the motion to suppress and the subsequent amended motion to suppress, finding that Mr. Oliver did not have a reasonable expectation of privacy in a backyard surrounded by a chain-link fence and that the defendants created exigent circumstances by attempting to destroy evidence.
Officers are permitted to conduct a warrantless seizure of an item in "plain view" if (1) the police see the item from a place they have a lawful right to be, (2) the incriminating nature of the item is "immediately apparent," and (3) the police have lawful access to the incriminating item. See Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "The zone of protection under the Fourth Amendment extends to the curtilage of a home, which includes a fenced or enclosed area encompassing the dwelling." Tillman v. State, 934 So.2d 1263, 1272 (Fla.2006). Therefore, this was an "open view" situation. See State v. Rickard, 420 So.2d 303 (Fla.1982) (holding that an "open view" situation existed when officers were able to see marijuana plants in the defendant's backyard through a chain-link fence while legally standing in an adjoining orange grove). "Open-view" is treated similarly to "plain-view," with the exception that some exigent circumstance is required to justify warrantless entry into the protected area in an "open-view" situation. See Murphy v. State, 898 So.2d 1031, 1033-34 (Fla. 5th DCA 2005).
We are required to reverse the order denying the motion to suppress because the evidence at the suppression hearing clearly demonstrates that the incriminating nature of the items was not immediately apparent before the officers entered the backyard without a warrant:
Q: And when you got to the chain-link fence, the distance between where you were standing and where the *18 individuals were, was about twenty feet? Is that correct?
A: I would say it's a good twenty, thirty
Q: Twenty or thirty feet?
A: I would guess. I'm thinking. I'm guessing twenty, thirty.
Q: And then you say you saw Mr. Oliver drop a bag or something.
A: Yes.
Q: But you couldn't tell what it was from that distance, could you?
A: I could tell it was a plastic baggie, yes, but as far as the contents inside, no.
Q: And whenjust on your direct testimony, you said that you thought it was maybe drugs, is that right?
A: Crack cocaine.
Q: You're speculating at this point?
A: With my training, that's what [it] usually is; either marijuana or crack cocaine.
Q: Okay, that's what it usually is but you weren't for sure what it was, is that right?
A: That's right.
Q: And now you say that you saw Mr. Mason doing some furtive movements with his hands, is that right?
A: Yes, he goes from a sitting position and then when he sees us, quickly moves to his left.
Q: But during that time that he's talking, doing this furtive movement, you didn't see what was in his hands, did you?
A: No, I did not.
Q: So you don't know if it was contraband or candy or anything else, do you?
A: No, I did not.
Q: And at that point that you entered the gate. Is that right?
A: Yes.
Q: And it was only when you got close were you able to see what type of items were on the ground. Isn't that right?
A: Correct.
The testifying officer was not able to identify the baggie's contents with certainty from her vantage point outside the fenced back yardan area protected by the Fourth Amendment from warrantless search. In De La Cruz v. State, this court held that "when closer examination of an item observed in plain view is necessary to confirm its incriminating nature, its nature is not considered `immediately apparent.'" 884 So.2d 349, 352 n. 2 (Fla. 2d DCA 2004) (quoting Minter-Smith v. State, 864 So.2d 1141, 1144 (Fla. 1st DCA 2003)); see also Holloman v. State, 959 So.2d 403, 408 (Fla. 2d DCA 2007) (observing, in dicta, that the incriminating nature of M & M containers viewed through an open door was not "immediately apparent" to support a warrantless entry of a hotel room despite officer's testimony that those containers more often contained crack cocaine than candy). Because the illicit nature of the contents of the baggie was not immediately apparent and only discoverable upon closer inspection, the officer's reasonable suspicion based upon her training and experience was insufficient to support warrantless entry into the backyard.
Accordingly, we reverse Mr. Oliver's judgment and sentence for possession of cocaine and remand for his discharge for this offense.
Reversed and remanded.
CANADY, J., Concurs.
ALTENBERND, J., Concurs with opinion.
*19 ALTENBERND, J., Concurring.
Chain-link fences, which create little sense of privacy, often make for close search and seizure cases. See State v. Loomis, 436 So.2d 1103 (Fla. 4th DCA 1983). This is a close case in my mind. The testifying police officer was an experienced, well-trained narcotics officer. She undoubtedly saw circumstances that strongly suggested to her that the men in the shed were selling drugs as reported by the anonymous tipster. She did not, however, actually see contraband in open view; she saw evidence suggesting its existence.
In retrospect, it may have been better if the police department had sent an undercover officer to view the location before dispatching a patrol car. The officer and her partner were sent to this location in a standard police car in full uniform, including black raid vests. Chain-link fences provide open view in both directions. The officers' reasonable assumption that the men were destroying evidence was based on the reaction of the men when they saw the officers. The officers could not, however, enter the premises to avoid destruction of evidence when they lacked probable cause to make an arrest unless and until they had sufficient evidence that contraband existed in open view. Thus, as explained in the majority opinion, under the three-prong analysis provided in Horton, this case is resolved solely under the second prong.