LEWIS, J.
Joseph Burrell June, Appellant, appeals his conviction and five-year sentence for possession of cocaine, in violation of. section 893.13, Florida Statutes (2010). Appellant argues that the trial court erred in denying his motion to suppress and motion to dismiss. We affirm the trial court’s denial of his motion to dismiss without further discussion. Appellant challenges the denial of his motion to suppress cocaine found on his person on the ground that it was seized pursuant to an illegal stop and frisk. For the reasons that follow, we also affirm the denial of the motion to suppress.
Officer Von Ansbach Young (“Officer Young”) of the Escambia County Sheriffs Office testified that on the day at issue, Appellant was riding his bicycle on Gulf Coast Highway in Escambia County, heading eastbound. Officer Young was driving his patrol car and was also heading eastbound, approaching Appellant from behind him; he pulled his car off to the side of the road behind Appellant. Officer Young did not activate his patrol lights, but he exited the vehicle. Appellant turned around and observed Officer Young, but Officer Young did not order Appellant to stop. Officer Young had never seen Appellant in the area, so he began to converse with Appellant; he had no reason to believe that Appellant was engaged in criminal activity. Officer Young asked Appellant if he had identification, and he gave Officer Young his identification card. Officer Young took the identification card and reported Appellant’s information to dispatch to determine if Appellant had any arrest warrants, but returned the card to Appellant as he waited to hear from dispatch.[1] When Officer Young first began talking with Appellant, *5 he was “agreeable,” but he continued to reach into his pockets while speaking to Officer Young. Eventually, Officer Young asked for consent to search, but Appellant refused. When Officer Young asked to search Appellant, he inquired whether Appellant had any contraband on his person, and Appellant stated he did not, but also divulged that he had a pocketknife in his front-right pants pocket. Appellant then began “fidgeting” or exhibiting “nervous energy.”
Officer Young continued to speak with Appellant, and Appellant continued reaching into his pockets; at that point, Young asked him to stop doing so, as he was concerned about the pocketknife and other potential weapons. Appellant stated that the request was not a problem, and the conversation continued; however, Appellant reached into his pockets again two or three times. Officer Young then informed Appellant that he would conduct a pat-down for safety reasons, and he conducted the pat-down to secure the pocketknife and search for other possible weapons. First, Officer Young secured the pocketknife found in Appellant’s front-right pants pocket. Then, Officer Young patted down the other pockets, but “[i]t wasn’t an invasive search, by any means. It was just feeling the outer part of his clothing to make sure there were no other weapons that could harm me at that time.” The shirt pocket was part of “a plaid shirt without a top flap.” Officer Young “just felt the bottom of that pocket and immediately felt a plastic baggy with a rock-like substance in it.” The packaging was consistent with cocaine’s packaging, as it was in a plastic baggy, and Officer Young could feel the rock-like pieces at the bottom of the baggy. Officer Young stated that “[d]ue to training and experience, [he] knew immediately that it was [going to] be cocaine.” Officer Young field-tested the substance, which produced a positive result for cocaine.
At the close of testimony, the trial court denied Appellant’s motion to suppress the cocaine. In doing so, the trial court found that Officer Young had a legal right to conduct a pat-down to search for weapons when Appellant admitted that he had a pocketknife and continued to reach his hand in the pocket where he had a pocketknife, and that the cocaine would be admitted under the plain-feel doctrine because Young testified that, due to his training, he knew immediately what it was upon touching it.
“ ‘A trial court’s ruling on a motion to suppress comes to us clothed with a presumption of correctness and, as the reviewing court, we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.’ ” Brye v. State, 927 So.2d 78, 80 (Fla. 1st DCA 2006) (quoting Murray v. State, 692 So.2d 157, 159 (Fla.1997)). The State Constitution requires this Court to resolve Fourth Amendment search and seizure issues in conformity with applicable United States Supreme Court precedent. See Art. I, § 12, Fla. Const. (“This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.”); see also State v. Robinson, 740 So.2d 9, 12 n. 2 (Fla. 1st DCA 1999). “[A] trial court’s ruling on a motion to suppress is a mixed question of law and fact that ultimately determines constitutional rights and should be reviewed using a two-step approach — deferring to the trial court’s findings of fact as long as they are supported by competent, substantial evidence, but reviewing de novo a trial court’s application of law to the historical facts.” Delhall v. State, 95 So.3d 134, 150 (Fla.2012) (citing Connor v. State, *6 803 So.2d 598, 605 (Fla.2001), and Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Under the exclusionary rule created by the United States Supreme Court, “[e]vidence obtained directly or indirectly from a violation of the [F]ourth [A]mendment is not admissible against an accused at trial.” State v. Edward, 25 So.3d 610, 611 (Fla. 1st DCA 2009) (citing State v. Griffith, 500 So.2d 240, 243 (Fla. 3d DCA 1986)).
The Florida Supreme Court has explained that there are three levels of encounters between citizens and law enforcement that determine whether Fourth Amendment protections apply:
There are essentially three levels of police-citizen encounters. The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
While not involved in the instant case, the third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed. Popple v. State, 626 So.2d 185, 186 (Fla.1993) (internal citations omitted).
“[T]he totality of the circumstances controls in cases involving the Fourth Amendment.” Brye, 927 So.2d at 83 (alteration in original) (quoting State v. Baez, 894 So.2d 115, 117 (Fla.2004)). The Fourth District has noted that “analytical difficulty in this area arises because it can be hard to distinguish a citizen encounter from an investigatory stop. Some cases turn on the fact that an officer’s conduct went beyond a consensual encounter and amounted to an investigatory stop for which there was an inadequate basis.” Johnson v. State, 785 So.2d 1224, 1228 (Fla. 4th DCA 2001) (citations omitted). It is constitutionally permissible for law enforcement to conduct a pat-down if an encounter begins as a consensual encounter, even when there is no reasonable belief at the inception of the encounter that criminal activity occurred or was underfoot, if subsequently law enforcement has a reasonable belief that the citizen is armed or potentially dangerous. See id. at 1226, 1229 (citing Lightbourne v. State, 438 So.2d 380 (Fla.1983), as controlling, and further noting that “[a]n officer’s observations during a consensual encounter can give rise to a reasonable belief of both a weapons violation and a potential danger to the officer, which transform the encounter into an investigatory stop, justifying a protective pat[-]down.”).
The Second and Fifth Districts have held that an officer’s request to remove one’s hand from a pocket will not convert a consensual encounter into an investigatory detention when made to ensure an officer’s safety. See Lang v. State, 671 So.2d 292, 294 (Fla. 5th DCA 1996) (“Nor is it improper for an officer to ask a person to remove his hands from his pockets during a citizen encounter.”) (citation omitted); Sander v. State, 595 So.2d 1099, *7 1100 (Fla. 2d DCA 1992) (“[I]t was not improper for [law enforcement] to ask Sander to remove his hands from his pockets.”). On the other hand, other districts have held that an officer’s request to remove one’s hand from a pocket will convert a consensual encounter into an investigatory detention. See Johnson v. State, 610 So.2d 581, 588 (Fla. 1st DCA 1992) (“Appellant was seized, as Officer Bates’ order for [ajppellant to take his hands out of his pockets and to turn around was a directive that [ajppellant was not free to disregard.”) (citing Dees v. State, 564 So.2d 1166, 1168 (Fla. 1st DCA 1990)); Evans v. State, 546 So.2d 1125, 1125 (Fla. 3d DCA 1989) (“[T]he contraband was not, as the trial judge held, voluntarily abandoned, but was rather revealed only because of a constitutionally unjustified police order.”); Lee v. State, 868 So.2d 577, 580 (Fla. 4th DCA 2004) (“The request by [law enforcement] for Lee to remove his hand from his pocket amounted to a stop.”). Under Fourth Amendment jurisprudence, a seizure or stop occurs “when one’s freedom of movement has been restrained, either by physical force or a showing of authority, so that the surrounding circumstances demonstrate a reasonable person would not have felt free to leave.” Johnson, 610 So.2d at 583 (citing, among other cases, Terry v. Ohio, 392 U.S. 1, 16-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Initially, Appellant and Officer Young were merely engaged in a consensual encounter, but based on our precedent, Appellant was seized when he was ordered to keep his hands out of his pockets. See id. Thus, Fourth Amendment constitutional safeguards applied at that point, and we must determine whether Officer Young had a reasonable belief at that time to believe that Appellant was armed and potentially dangerous to justify the pat-down.
In Johnson v. State, 785 So.2d 1224 (Fla. 4th DCA 2001), a similar case, the issue was “whether a police officer may conduct a pat-down for weapons during what began as a consensual encounter with a citizen.” Id. at 1225. The Fourth District held that “the officer made observations which supported his reasonable belief that the appellant was armed and potentially dangerous .... [and] was, therefore, entitled to conduct a pat-down under the Fourth Amendment.” Id. The Fourth District explained that the pat-down was justified because “[t]he time of day, the bulge in Johnson’s pocket, his continuous reaching toward the pocket, his nervousness, his demeanor, and his violent shaking during the interview, when viewed in light of Deputy McDonald’s experience, gave rise to a reasonable belief that Johnson was armed and potentially dangerous.” Id. at 1228.
Here, Officer Young initially began a consensual encounter with Appellant. Officer Young pulled his patrol car behind Appellant while he was riding his bicycle, and never ordered him to stop, but merely engaged in a conversation with him. Eventually, Officer Young asked Appellant to keep his hands out of his pockets, and conducted a pat-down of Appellant, after Appellant (1) divulged that he had a pocketknife after being asked if he had any contraband on his person, (2) continuously reached for the pocket carrying the pocketknife, and (3) was nervous after revealing that he had a pocketknife. Like Johnson, Appellant was nervous; particularly, he was “fidgeting” and exhibiting “nervous energy” after being asked if he had any contraband on his person. Also, instead of observing a bulge in Appellant’s pocket as occurred in Johnson, Officer Young had stronger evidence to believe that Appellant was armed and potentially dangerous: he admitted that he was carrying a pocketknife that he continuously *8 reached for nervously.[2] We must consider the totality of the circumstances in deciding Fourth Amendment search and seizure issues. Brye v. State, 927 So.2d 78, 83 (Fla. 1st DCA 2006). In the instant case, like Johnson, the totality of the circumstances shows that Officer Young had a reasonable belief that Appellant was armed and potentially dangerous, and thus he was entitled to conduct a pat-down of Appellant.
Further, Appellant argues that even if Officer Young was justified in conducting the pat-down, he exceeded the permissible scope of the pat-down. Specifically, Appellant argues that the trial court erred in holding that the plain-feel doctrine applies. In Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court established the plain-feel doctrine, in which it explained the doctrine and the rationale for creating it as follows:
If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
Applying the newly created doctrine to the facts in Dickerson, the Supreme Court explained that law enforcement exceeded the scope of the frisk because he did not immediately recognize the lump as crack cocaine; rather, “the officer determined that the lump was contraband only after ‘squeezing, sliding and otherwise manipulating the contents of the defendant’s pocket’ — a pocket which the officer already knew contained no weapon.” Id. at 378, 113 S.Ct. 2130.
Here, Officer Young clarified that his pat-down “wasn’t an invasive search, by any means. It was just feeling the outer part of his clothing to make sure there were no other weapons that could harm me at that time.” Officer Young also testified that he “just felt the bottom of that pocket and immediately felt a plastic baggy with a rock-like substance in it. Due to training and experience, I knew immediately that it was [going to] be cocaine.” Officer Young lightly patted the shirt pocket to determine whether Appellant had a weapon in it, and immediately recognized that the baggy probably contained crack cocaine. Thus, under the circumstances of this case, the trial court did not err in concluding that the plain-feel doctrine applies.
For the foregoing reasons, the trial court did not err in denying Appellant’s motion to suppress the cocaine. Accordingly, we affirm Appellant’s judgment and sentence.
AFFIRMED.
BENTON, C.J., and ROWE, J„ concur.

. The record is silent as to whether Officer Young ever received a response from dispatch as to the warrants check.

. Appellant claims that carrying a pocketknife does not render a citizen armed and dangerous, noting that a pocketknife is excluded from the definition of "weapon” in section 790.001(13), Florida Statutes (2010). However, chapter 790 "deals primarily with permitting and licensing for the carrying of concealed weapons and other firearm and weapon regulations.” Dobson v. State, 737 So.2d 590, 591 (Fla. 4th DCA 1999). In Dobson, the Fourth District stated that it would be an unreasonable interpretation that an officer could not deem a citizen armed and dangerous for purpose of the stop and frisk law merely because an item was not listed as a weapon in section 790.001(3), a regulatory statute. Id. at 592. We agree.