PER CURIAM.
Mere presence in a high crime area does not provide reasonable suspicion for a stop .and frisk. The police here — at every turn — lacked justification for their actions; •and Mr. Griffin’s motion to suppress should have been granted.
The facts here are simple and straightforward: with no reason to suspect criminal activity, an officer approached a man in a high-crime area standing in a driveway and immediately demanded he remove his hand from his pocket. When the man did nothing in response and refused to consent to a search, the officer conducted a weapons pat-down. During the weapons pat-. down, the officer grabbed the man’s pocket, felt a “squishy bag” with a small knot, and believed, immediately, he was “almost certain” the item was cocaine.

The Encounter

Police-citizen encounters come in three forms: voluntary/consensual, investigatory stop, and arrest.[1] June v. State, 131 So.3d 2, 6 (Fla. 1st DCA 2012). The first, a completely voluntary and consensual encounter, can be terminated at will by the citizen — or' never even started. Id. An officer is not required to have any suspicion to merely enter into conversation with a citizen; but at the same time, a citizen is under no obligation to engage with the officer or respond in any way. Id.
Second though, where an officer has a “reasonable suspicion that a person has committed, is committing, or is about to commit a crime,” the officer may temporarily detain a citizen to confirm or refute his or her suspicions. See § 901.151(2)-(4), Fla. Stat.; June, 131 So.3d at 6. And where an officer has permissibly detained an individual, or is about to do so, he or she may conduct a limited search of the individual “only to the extent necessary to disclose, and for the purpose of disclosing, the presence of [a] weapon” if the officer has a “reasonable belief the person detained is armed.” See § 901.151(5), Fla. Stat.; State v. Webb, 398 So.2d 820, 825 (Fla.1981).
The nature of the encounter turns on whether the officer “hinder[ed] or restricted] the person’s freedom to leave or freedom to refuse to answer inquiries.” Popple v. State, 626 So.2d 185, 187-88 (Fla.1993). The question, ultimately, becomes whether a reasonable person in the *291 same circumstances “would conclude that he or she is not free to end the encounter and depart.” Id. Importantly, an officer’s demand that a citizen remove his or her hands from their pockets constitutes a seizure: it is a directive or show of force an individual is not free to disregard: June, 131 So.3d at 7.
Accordingly, when thé officer here — immediately upon contact — demanded Mr. Griffin remove his hand from his pocket, the officer seized Mr. Griffin. See id. Anything consensual or voluntary about the contact ceased the moment the officer demanded Mr. Griffin remove his hand from his pocket. It is at the moment of the almost-immediate demand, then, that the officer must have had a reasonable suspicion that Mr. Griffin was “armed and potentially dangerous to justify the pat-down.” See id.
Standing in a driveway with a hand in one’s pocket neither provides reasonable suspicion one is armed and potentially dangerous nor justifies an invasion of one’s personal liberty.
The present facts are distinguishable from this Court’s recent decision in June v. State. There, June (i) told the officer he had a pocketknife in his right front pocket, (ii) continuously reached into that pocket during his conversation with the officer, and (iii) increased his nervous behavior upon revealing he was carrying a pocketknife. June, 131 So.3d at 7-8. Here, Mr. Griffin simply stood in his driveway and put his hand in his pocket. It is not apparent how this constitutes suspicious activity.
Again, it is the moment the officer demanded Mr. Griffin remove his hand (i.e., almost immediately) at which we stop the clock and observe the facts known to the officer. Testimony that Mr. Griffin repeatedly refused to remove his hand from -his pocket and exhibited several signs of increasing anxiety and nervousness during the stop are observations that occurred after the seizure; they cannot be considered when evaluating whether the officer had reasonable suspicion for the seizure. See Baptiste v. State, 995 So.2d 285, 294 (Fla.2008) (“[T]he reasonableness of the officers’ suspicion must be measured by the information that the officers knew before conducting the stop-and-frisk.”) (citing Florida v. J.L., 529 U.S. 266, 271,120 S.Ct. 1375,146 L.Ed.2d 254 (U.S.2000)).
The additional fact that the area was “high crime” does not change this determination. A “high crime area,” in and of itself, does not translate to reasonable suspicion one is armed and dangerous or that criminal activity must be afoot. See Parker v. State, 18 So.3d 555, 558 (Fla. 1st DCA 2008); Freeman v. State, 559 So.2d 295, 297 (Fla. 1st DCA 1990). In fact, “the cases are legion that presence in a high crime area, even when coupled with furtive movement, do not justify an investigatory stop.” Freeman, 559 So.2d at 297; Daniels v. State, 543 So.2d 363, 365-66 (Fla. 1st DCA 1989). It is even well settled that placing one’s hands inside a jacket or behind one’s back upon seeing officers — in a high crime area — does not justify a reasonable suspicion sufficient for a weapons pat-down. Daniels, 543 So.2d at 365-66 (citing Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989); Baggett v. State, 531 So.2d 1028 (Fla. 1st DCA 1988); Jenkins v. State, 524 So.2d 1108 (Fla. 3d DCA 1988); R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983)).
In sum, the officer’s description of the area as a “high crime area” was used to justify his invasion of Mr. Griffin’s personal liberty. A “high crime” designation is not synonymous with reasonable suspicion of illegality. Nor are hands in pockets synonymous with reasonable suspicion of *292 illegality. Even combined, the two facts are wholly insufficient to have provided the officer with reasonable suspicion Mr. Griffin was armed and potentially dangerous.[2]
If ones mere presence in a “high crime” area can justify a reasonable suspicion for a weapons pat-down, then everyone who resides in, works in, visits, conducts business in, attends school in, or traverses through the area can be considered armed and potentially dangerous. This presumption could lead to a blanket suspension of constitutional rights for certain communities. Fourth Amendment constitutional protections do not stop at the entryway to selected neighborhoods.
At this juncture, the officer’s actions were unconstitutional. This alone required the trial court to suppress the search of Mr. Griffin’s pocket and resulting evidence.[3] Nevertheless, the officer continued.

The Weapons PaP-Down

In addition to the illegality of the detention, the officer’s weapons pat-down was highly problematic.
“If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons.” Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); see Rimmer v. State, 825 So.2d 304, 313 (Fla.2002) (explaining the officer must first have been properly in the place where he feels contraband and have had a lawful right of access to the contraband). It bears emphasizing that the incriminating nature of the contraband must be “immediately apparent.” Dickerson, 508 U.S. at 375-76, 113 S.Ct. 2130 (emphasizing the incriminating nature must be “already known”); Rimmer, 825 So.2d at 313; Ray v. State, 849 So.2d 1222, 1225-26 (Fla. 4th DCA 2003) (feeling plastic baggy and testifying narcotics are frequently contained in plastic baggies did not meet “immediately apparent” requirement); Jordan v. State, 664 So.2d 272, 273-74 (Fla. 5th DCA 1995) (feeling “hard, rocky-like substance,” without details about officer’s experience with crack cocaine was insufficient); see also Oliver v. State, 989 So.2d 16, 18 (Fla. 2d DCA 2008) (seeing plastic baggie and believing, based on “training” that “either marijuana or crack cocaine” was inside the baggie, was insufficient).
Merely stating that “training and experience” led an officer to “know” an item was contraband is simply not enough. See Thomas v. State, 644 So.2d 597, 597-98 (Fla. 5th DCA 1994) (finding insufficient where officer testified only “[he] could feel something small, and basically to my training, education and experience it felt like to be [sic] a piece of cocaine”). The law requires more than a “naked subjective statement of a police officer who has a ‘feeling’ based on ‘experience.’ ” State v. J.D., 796 So.2d 1217, 1219-20 (Fla. 4th DCA 2001) (quoting Doctor v. State, 596 *293 So.2d 442, 445 (Fla.1992)); CAM. v. State, 819 So.2d 802, 804-05 (Fla. 4th DCA 2001) (reversing denial of suppression where officer testified he could “easily feel the difference between a plastic bag commonly used for illegal drugs, and a pouch or case commonly used for tobacco through clothing”; officer’s “unadorned conclusion” he immediately knew the substance he felt, “through the clothing material of the pants and the packaging inside it was-to the exclusion of the many other lawful possibilities-marijuana” was insufficient); see also Cole v. State, 727 So.2d 280, 281 (Fla. 2d DCA 1999) (“[P]robable cause does not arise anytime an officer feels an object that the officer reasonably suspects to be contraband.”).
Officers may not “squeez[e], slid[e] and otherwise manipulate] the contents of the defendant’s pocket” in order to determine the incriminating nature of the item. Dickerson, 508 U.S. at 378-79, 113 S.Ct. 2130. In fact, simply lifting up a stereo to obtain the serial number from the bottom has amounted to impermissible manipulation. Id. (citing Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)); cf. June, 131 So.3d at 8 (“lightly patt[ing] shirt pocket” and “immediately recognizing]” crack cocaine was not impermissible manipulation).
The United States Supreme Court has “strictly circumscribed” plain-feel searches and “been sensitive to the danger ... that officers will enlarge a specific authorization [e.g., a weapons pat-down], into the equivalent of a general warrant to rummage and seize at will.” Dickerson, 508 U.S. at 378,113 S.Ct. 2130.
As for the search here, the officer “grabbed a handful of the pocket” and the “bag” inside to then feel “like, kind of a little squishy” and “a small knot.” This exceeded the scope of a “pat-down.” Grabbing a handful and recognizing a squishy feel and small knot takes squeezing or manipulation. This is not the case of “lightly patting”—or patting at all, in fact. Thus, the “pat-down” was overreaching and impermissible.
Second, all the officer detected was a bag with something “squishy” and a knot. A squishy, knotted bag could be a host of legitimate property items. Thus, it could not have been “immediately apparent” the item was powder cocaine. Third, the officer merely testified he “believed” the item was cocaine and he was “almost certain” it was cocaine. “Immediately apparent” requires more than such equivocating.
And, the officer’s use of the phrase “in his training and experience” does not cure these constitutional insufficiencies. Officers, such as this one, are highly trained. But more than the officer’s bare recitation that his or her “training and experience” is required. The premise that this officer could distinguish—from patting solely the outside of clothing material—that an item was a bag of powder cocaine is not supported by this record; it rests solely on the officer’s unadorned conclusion. Where courts do not require more, they fail the Supreme Court’s call to “strictly circumscribe” plain-feel discoveries during weapons pat-downs.
In sum, the officer had to manipulate and squeeze the item he patted prior to determining what the item was. The officer could only state a “belief’ he was “almost certain” the item was powder cocaine. And the officer’s bare conclusion, given the host of other legitimate possibilities, is not supported by mere reference to “training and experience.” The search here exceeded the scope of a lawful weapons pat-down—to the extent one was even permitted.

*294
Conclusion

Mr. Griffin was seized when the officer demanded he remove his hand from his pocket. At this moment, the officer did not have reasonable suspicion to believe Mr. Griffin was armed and potentially dangerous. Simply being in a high crime area and putting a hand into a pants’ pocket cannot alter this conclusion. Without reasonable suspicion to seize Mr. Griffin, the ensuing search was unconstitutional; any evidence obtained therefrom must be excluded. Moreover, the officer exceeded the permissible scope of the ensuing search he performed; he impermissibly manipulated the item he found. Moreover, “training and experience” cannot support the bare, subjective conclusion that it is immediately apparent a squishy baggy with a knot is cocaine. Similarly, the officer’s “almost certain” “belief’ does not withstand strict constitutional analysis.
The trial court should have granted Mr. Griffin’s motion to suppress, Mr. Griffin’s judgment and sentence are therefore REVERSED.
VAN NORTWICK, CLARK, and SWANSON, JJ., concur.

. The third type, arrest, is not applicable here. See June v. State, 131 So.3d 2, 6 (Fla. 1st DCA 2012) (explaining arrest requires probable cause a crime has been or is being committed).

. As Judge Zehmer aptly explained, "The majority opinion seems to suggest that anyone parking in the woods near a high-crime area with their lights off at 1:00 A.M. can be presumed to be involved in criminal conduct. I do not accept that the statute or our state and federal constitutions authorize detention where the only basis for the officer's suspicion is such a generalized presumption of criminal conduct.” Freeman, 559 So.2d at 298 (Zeh-mer, J., dissenting).

. This unconstitutional seizure taints the following search and requires exclusion of the bag of cocaine. See June v. State, 131 So.3d 2, 7 (Fla. 1st DCA 2012) (noting remedy of exclusion of evidence obtained directly or indirectly from a Fourth Amendment violation).