DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHAUN ANTHONY TEDFORD,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-2184

[November 12, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Michael C. Heisey, Judge; L.T. Case No. 472018CF000545A.

Carey Haughwout, Public Defender, and Breanna Atwood, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Deborah Koenig, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

We address an issue of first impression: the propriety of using a drug dog to sniff the passenger of a vehicle during a traffic stop based on a reasonable and articulable suspicion the passenger possesses drugs, where the sniff itself is not based on a warrant or probable cause. Upon consideration of the lens of the totality of the circumstances in this case and utilization of the analysis applicable to a stop authorized by *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, we conclude the officers did not violate the Fourth Amendment. Thus, we affirm the trial court's denial of the motion to suppress evidence.

*Background*

Shaun Tedford ("Defendant") was arrested and charged with one count of possession of 20 grams or less of cannabis and one count of possession of a synthetic cannabinoid after officers found synthetic cannabis on his person and cannabis in the back of the patrol vehicle following his transport to jail. Defendant moved to suppress the drugs, arguing that

the officers lacked probable cause to search his person and the subsequent discovery of drugs in the patrol vehicle was fruit of the poisonous tree.

A narcotics detective testified that he worked with a drug dog named Samba. Samba was trained to detect five substances up to 100 feet away and within one foot of the exact location: marijuana, cocaine, methamphetamine, heroin, and ecstasy. However, Samba was *not* trained to alert to synthetic marijuana. Samba was also trained to get as close as he could to the narcotic and "alert" by sitting once he smells the narcotic. Samba has never given a false positive alert but can give a non-productive alert, which is an alert to a substance that had been there in the past but was no longer there.

The narcotics detective was called to the scene by the officer who conducted the traffic stop. There were two occupants in the vehicle: the driver and Defendant, who was a front seat passenger. Upon arriving at the scene, the narcotics detective had both occupants step back to the officer's vehicle, which was about eight to ten feet away, and he brought Samba to the stopped vehicle. Samba first alerted to the front seat passenger door handle and then the front passenger seat. Based on the alerts, the narcotics detective searched the entire vehicle but did not find anything. After the search of the car, he then had Samba conduct a sniff of both occupants. Samba did not alert to the driver but alerted to Defendant's front right pocket. Samba got close enough that his nose touched Defendant's pocket. The narcotics detective searched the pocket alerted to by Samba, as well as all pockets on Defendant's pants, but did not find anything. He did not search under Defendant's waistband or his underwear. After some resistance from Defendant, the narcotics detective removed and searched Defendant's right shoe and found synthetic marijuana. After an on-scene test to confirm the substance, Defendant was arrested and placed in the backseat of a third officer's vehicle.

The third officer testified that he was called to transport Defendant to jail. When transporting people, he always checks the backseat area before and after transport, which he did in this case. When he shined his flashlight on the backseat area after transport, a cellophane wrapper caught his attention. He then found marijuana.

Defendant moved to suppress the drugs. At the suppression hearing, Defendant conceded that there was probable cause for the traffic stop, that there was probable cause to search the vehicle, and that it was a short time between the stop and when the narcotics detective conducted the dog sniff of Defendant's person. However, he argued that after the search of

the car yielded no drugs, probable cause had "gone away" and the narcotics detective should have ceased his search for drugs and not used Samba to search Defendant's person. Defendant contended to the trial court that without probable cause or a warrant, the search was unconstitutional.

The trial court issued a written order denying the motion to suppress, finding that Samba conducted a free air sniff and "the search of [Defendant's] person, pursuant to the K9 alert [of Defendant's person], was permissible as the K9 alert gave [the narcotics detective] the necessary probable cause to conduct the search."

Defendant entered a plea of no contest to both counts and expressly reserved the right to appeal the denial of the motion to suppress. After a county jail sentence was imposed, Defendant gave notice of appeal.

*Appellate Analysis*

"We review orders on motions to suppress to determine whether the trial court's factual findings are supported by competent substantial evidence and review legal issues de novo." *Gentles v. State*, 50 So. 3d 1192, 1196 (Fla. 4th DCA 2010) (quoting *State v. Young*, 971 So. 2d 968, 971 (Fla. 4th DCA 2008)). "A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Id.* (quoting *Day v. State*, 29 So. 3d 1178, 1179 (Fla. 4th DCA 2010)).

Defendant argues that the dog sniff of his person was unlawful because it was a search without the requisite probable cause or warrant. More specifically, Defendant argues that after the search of the car revealed no contraband or illegal activity, probable cause to search further was dispelled. Defendant further argues that the sniff of his person was not a "free air sniff" conducted from a distance because the dog's nose touched him, "invad[ing] [Defendant's] privacy and bodily integrity." The focus of the distinction between a "free air sniff" and an "up close sniff" is the concern about the intrusiveness of governmental action. Defendant concedes, however, that the stop, sniff of the car, and search of the car were lawful.

The State counters that the sniff of Defendant's person did not constitute a search, and thus, the Fourth Amendment was not implicated. More specifically, the State argues that the sniff of Defendant's person did

3

not violate the Fourth Amendment because dog sniffs have been recognized as "*sui generis*" and authorized under *Terry*. The State alternatively argues that if the sniff of Defendant's person is deemed a search, then there was probable cause for the search.[1]

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their *persons*, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV (emphases added). Similarly, the Florida Constitution provides "[t]he right of the people to be secure in their *persons*, houses, papers and effects against *unreasonable* searches and seizures . . . . This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const. (emphases added). As directed by our state constitution, we focus our analysis on the legal principles espoused by the United States Supreme Court regarding Fourth Amendment searches in general and the appropriate use of law enforcement drug dogs to find contraband vis-à-vis the protections of the Fourth Amendment. Those principles are discussed in five cases: *United States v. Place*, 462 U.S. 696 (1983); *Illinois v. Caballes*, 543 U.S. 405 (2005); *Florida v. Harris*, 568 U.S. 237 (2013); *Florida v. Jardines*, 569 U.S. 1 (2013); and *Rodriguez v. United States*, 575 U.S. 348 (2015). We note that the Supreme Court has not directly addressed the propriety of a dog sniff of a person while detained for a traffic stop. *Place* and *Caballes* address the Fourth Amendment and dog sniffs in the context of seizures of personal property. *Jardines* addresses a dog sniff conducted on the front porch of the defendant's home. *Harris* discusses the contours of probable cause in relation to a dog sniff. *Rodriguez* addresses the propriety of a dog sniff after a traffic stop has come to an end.

*Dog Sniffs and U.S. Supreme Court Precedents*

The United States Supreme Court has made clear that "the Fourth Amendment protects people, not places" because "[n]o right is held more sacred, or is more carefully guarded, by the common law, than *the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable*

---

[1] It is important to note that Defendant makes no issue on appeal about the seizure of his person (detention as a passenger) or the length of the seizure. His sole focus on appeal is the propriety of the dog sniff as a search of his person. We proceed to address Defendant's contention that the dog sniff of his person was a search that required probable cause.

4

*authority of law.*" *Terry*, 392 U.S. at 9 (emphasis added) (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). The Court has explained that "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In *Jardines*, the Court noted that "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Jardines*, 569 U.S. at 5 (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)).

Contending the dog sniff in this case violated the Fourth Amendment, Defendant asserts that Samba touching his pocket with his nose during the sniff "invaded [his] privacy and bodily integrity." Additionally, Defendant challenges the trial court's factual finding that the dog sniff was a "free air sniff," arguing that the finding was not supported by competent, substantial evidence because the evidence was undisputed that Samba's nose touched his pocket. In support of his position that the dog's touch invaded his privacy and bodily integrity, Defendant cites several federal cases.[2] However, the cases upon which Defendant relies are not relevant to our analysis in this case because those cases address random dog sniffs of persons where there was no reasonable suspicion of criminal activity.

*Terry* is the first case in which the Supreme Court "recognized 'the narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual's personal security based on less than probable cause.'" *Place*, 462 U.S. at 702 (quoting *Michigan v. Summers*, 452 U.S. 692, 698 (1981)). Although *Place*, *Caballes*, and *Jardines* analyze Fourth Amendment protections in the context of governmental actions constituting a *seizure of property*, the Court announced some general principles of Fourth Amendment jurisprudence that apply to actions constituting searches as well. For example, in *Place*, the Court explained:

> The exception to the probable-cause requirement for limited seizures of the person recognized in *Terry* and its progeny rests on a balancing of the competing interests to determine the reasonableness of the type of seizure involved within the meaning of "the Fourth Amendment's general proscription against unreasonable searches and seizures." 392 U.S., at 20, 88 S. Ct., at 1879. *We must balance the nature and quality*

---

[2] *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260 (9th Cir. 1999); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982); *Jones v. Latexo Indep. Sch. Dist.*, 499 F. Supp. 223 (E.D. Tex. 1980).

*of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.* When the nature and extent of the detention are *minimally intrusive* of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure *based on less than probable cause.*

*Place,* 462 U.S. at 703 (emphases added). Applying this balancing principle, the Court in *Place* concluded that:

> [W]hen an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope.

*Id.* at 706.

More important to our analysis is the Court's discussion in *Place* as to whether a dog sniff of luggage was a *search* prohibited by the Fourth Amendment. The Court recognized that the purpose of seizing Place's luggage was to conduct a dog sniff. *Id.* The Court observed that a dog sniff is *sui generis* because the sniff "does not require opening the luggage," "does not expose noncontraband items that otherwise would remain hidden from public view," and "discloses only the presence or absence of narcotics, a contraband item." *Id.* at 707. Because the information disclosed by a dog sniff is limited and less intrusive than a typical search, the Court "conclude[d] that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a 'search' within the meaning of the Fourth Amendment." *Id.* We note, however, that the context of the Fourth Amendment principles applied in *Place* involved exposure of personal property to a dog sniff, rather than exposing a person to a dog sniff.

The Court's opinion in *Caballes* also discusses important Fourth Amendment principles regarding the use of dog sniffs by law enforcement. There, the question addressed by the Court was very narrow: "Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." *Caballes,* 543 U.S. at 407. Importantly, the Court proceeded "on the assumption that the officer conducting the dog sniff had no information about respondent except that he had been [properly] stopped

for speeding." *Id.* With that assumption, the Court went on to note that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Id.* The Court noted that the Illinois Supreme Court suppressed the evidence obtained as the result of a dog sniff because, "[i]n its view, the use of the dog converted the citizen-police encounter from a lawful traffic stop into a drug investigation, and because the shift in purpose was not supported by any reasonable suspicion that respondent possessed narcotics, it was unlawful." *Id.* at 408. The Court disagreed with the analysis of the Illinois Supreme Court:

> In our view, conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy. Our cases hold that it did not.
>
> Official conduct that does not "compromise any legitimate interest in privacy" is not a search subject to the Fourth Amendment. *Jacobsen*, 466 U.S., at 123, 104 S. Ct. 1652. We have held that any interest in possessing contraband cannot be deemed "legitimate," and thus, governmental conduct that only reveals the possession of contraband "compromises no legitimate privacy interest." *Ibid.* This is because the expectation "that certain facts will not come to the attention of the authorities" is not the same as an interest in "privacy that society is prepared to consider reasonable." *Id.*, at 122, 104 S. Ct. 1652 (punctuation omitted). In *United States v. Place*[ ], we treated a canine sniff by a well-trained narcotics-detection dog as "*sui generis*" because it "discloses only the presence or absence of narcotics, a contraband item." *Id.*, at 707, 103 S. Ct. 2637; see also *Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000).

*Id.* at 408-09. After concluding that "use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests," the Court went on to hold that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 409-10. We again note that the context of the Court's analysis in *Caballes* was a dog sniff of the exterior of the respondent's car.

The Court's decision in *Rodriguez,* makes clear that a dog sniff conducted *after* the completion of a lawful traffic stop violates the Fourth Amendment because the "[a]uthority for the seizure [(the traffic stop)] thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez,* 575 U.S. at 354. Critical to the Court's reasoning was the fact that "[a] dog sniff, by contrast [to the ordinary inquiries incident to a traffic stop], is a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing.'" *Id.* at 355 (third alteration in original) (quoting *Indianapolis v. Edmond,* 531 U.S. 32, 40-41 (2000)). Because the Court has traditionally treated traffic stops analogous to a *Terry* stop, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* at 354 (citations omitted). Thus, because detecting evidence of ordinary criminal wrongdoing has nothing to do with the reasons for a traffic stop or officer safety concerns during the stop, a dog sniff cannot be justified under the Fourth Amendment if "conducting the sniff '*prolongs*'—i.e., adds time to—'the stop.'" *Id.* at 357 (emphasis added).

In *Jardines,* the Court addressed the use of a drug dog on the front porch of the defendant's home. 569 U.S. at 3. The dog accompanied officers as they approached the front door to conduct a citizen encounter, analogous to any visitor approaching a house to make an inquiry of the occupant. *Id.* at 3-4. The dog's alert to drugs at the front door of the residence was the basis for seeking a search warrant. *Id.* at 4. The Court observed:

> The [Fourth] Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "the Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred."

569 U.S. at 5 (quoting *Jones,* 565 U.S. at 406 n.3.). After noting that the officers "gathered [information for the search warrant] by physically entering and occupying [the curtilage of the home] to engage in conduct [(the dog sniff)] not explicitly or implicitly permitted by the homeowner," *id.* at 6, the Court went on to address the state's argument that *Place* and *Caballes* established that an investigation using a drug dog, by definition, does not implicate any legitimate privacy interest. *Id.* at 10. The Court responded to the state's argument by simply stating it addressed the same argument in *Jones,* which had been decided in the immediate prior term. *Id.*

8

In *Jones*, the Court said that although *Katz v. United States*, 389 U.S. 347 (1967), established that property rights are not the sole measure for the Fourth Amendment and an additional measure is the reasonable expectation of privacy test in determining the validity of searches under the Fourth Amendment, the expectation of privacy test "has been *added to*, not *substituted for*," the traditional property-based understanding of the Fourth Amendment. *Jones*, 565 U.S. at 408-09. For that reason, the majority in *Jardines* deemed it unnecessary to decide whether the officers' investigation of Jardines' home violated his expectation of privacy under *Katz*, because the officers clearly intruded on Jardines' property without express or implied permission to conduct a dog sniff. *Jardines*, 569 U.S. at 11. Pertinent to our analysis is the Court's conclusion that because the dog *physically intruded* onto Jardines' property, the Fourth Amendment was violated. However, we note that *Jardine*s did not involve a *Terry* stop in a public place.

In *Harris*, the Court addressed the probable cause standard in the context of a dog alert to drugs. The Court rejected the evidentiary standards established by the Florida Supreme Court to allow a drug dog alert to constitute probable cause to search. *Harris*, 568 U.S. at 248. The standards set by the Florida Supreme Court were deemed "inconsistent with the 'flexible, common-sense standard' of probable cause." *Id.* at 240 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). After observing that "[t]he test for probable cause is not reducible to 'precise definition or quantification,'" the Court noted that "[a]ll we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* at 243-44 (second alteration in original) (quoting *Gates*, 462 U.S. at 238, 231). The Court also made clear that in evaluating whether probable cause exists, a court must consider the totality of the circumstances. *Id.* at 244. The Court also emphasized that probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (quoting *Gates*, 462 U.S. at 232).

Important to our analysis, the Court said:

> In short, a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in

detecting drugs, and the defendant has not contested that showing, then the court should find probable cause.

*Id.* at 247-48. Even more important to our analysis is a comment the Supreme Court made in a footnote of the opinion:

> In the usual case, *the mere chance that the substance might no longer be at the location does not matter*; a well-trained dog's alert establishes a fair probability—all that is required for probable cause—that either drugs or evidence of a drug crime (like the precursor chemicals in Harris's truck) will be found.

*Id.* at 247 n.2 (emphasis added).

*Application of U.S. Supreme Court Precedents to This Case*

As previously stated, Defendant does not dispute that Samba's alert on the car provided probable cause to search the vehicle. Analogous to a dog alert to a vehicle, we conclude that Samba's alert after sniffing Defendant's body provided probable cause to remove his shoe, leading to the discovery of the synthetic marijuana. The question we resolve is whether under the facts of this case, Samba's sniff of Defendant's body constituted a search in violation of the Fourth Amendment.

Our analysis is guided by the context of the events as they unfolded. Stated another way, consideration of the totality of the circumstances in this case requires the recognition that the dog sniff was conducted as a result of a legal traffic stop, and there is no issue as to the length of the stop or whether the sniff of Defendant's person was conducted after the procedures for a routine traffic stop concluded. Importantly, Supreme Court precedents treat traffic stops as analogous to *Terry* stops in evaluating whether the Fourth Amendment has been violated.

We are satisfied that the officers in this case had an articulable and reasonable suspicion that Defendant may be in possession of illegal drugs when he was approached by Samba for a sniff. Samba first alerted on the passenger door handle and the passenger seat. Defendant was sitting in that same seat when the car was stopped. Because a dog sniff is *sui generis*, the officers' suspicions that Defendant had drugs on his person became articulable and reasonable *after* the search of the car revealed no drugs. On the facts of this case, we do not view the sniff of Defendant's person to violate the Fourth Amendment, using the lens of a *Terry* stop, which is applicable to a traffic stop. In other words, balancing the nature and quality of the intrusion (a single touch of a dog's nose) on the

individual's Fourth Amendment interests (freedom not to be touched) against the importance of the governmental interests alleged to justify the intrusion (locating illegal drugs), we are satisfied the dog sniff of Defendant's person was reasonable and not intrusive. This is because it occurred *after* Samba alerted on the seat in which Defendant was sitting, and it occurred *after* a search of the passenger seat area and the entire car did not reveal drugs. Because a drug dog sniff is *sui generis*, we also reject Defendant's argument that a *single brief touch* of Samba's nose to Defendant's pocket was impermissibly intrusive and violated Defendant's personal privacy of his body or the Fourth Amendment. There is no evidence that Samba acted in any intimidating fashion or that his nose touched Defendant for an extended period.[3]

We conclude that during the traffic stop, a reasonable suspicion developed that Defendant was in possession of illegal drugs. This reasonable suspicion justified a dog sniff of Defendant's person. Additionally, there was no Fourth Amendment violation when Samba sniffed Defendant's person and briefly touched Defendant's pocket one time with the dog's nose. Once Samba alerted on Defendant's person, the officers had probable cause to search Defendant for illegal drugs. The forced removal of Defendant's shoe was a legal search, yielding the discovery of synthetic cannabis on his person, which in turn, justified his arrest and transport to jail. The transport to jail resulted in more natural cannabis found in Defendant's constructive possession. Thus, we affirm the trial court's denial of the motion to suppress.[4]

*Affirmed.*

LEVINE, C.J., and KLINGENSMITH, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[3] We leave for another day the determination of whether the following scenarios violate the Fourth Amendment: (1) repeated touching of a person by a drug dog's nose, particularly to different areas of the body; (2) a drug dog's alert to a person's crotch; and (3) the sequence of the dog sniff in a different chain of events.

[4] We also note that our decision in this case is narrow, based on the specific facts, and reaffirm our holding in *Rehm v. State*, 931 So. 2d 1071 (Fla. 4th DCA 2006), "that a dog alert to a vehicle, or a seat in a vehicle, does not, *in and of itself*, provide sufficient probable cause to search the driver or a passenger." *Id.* at 1072 (emphasis added).